## ATLANTIC COAST LINE R. CO. v. TRAMMELL et al.

'(District Court, N. D. Georgia. March 24, 1923.)

1. **Commerce ⊙═89—Complaint that intrastate rate discriminated against interstate commerce must be first presented to Interstate Commerce Commission.**

    A complaint that an intrastate rate ordered by a state commission was a discrimination against interstate or foreign commerce must first be made to the Interstate Commerce Commission, which is given jurisdiction over such rates by the Transportation Act.

2. **Carriers ⊙═13(3)—Georgia commission cannot restore original discriminatory rate given to encourage industry and later withdrawn.**

    Under Civ. Code Ga. 1910, § 2630, empowering the Railroad Commission to prescribe just and reasonable rates, and section 2629, prohibiting unjust discrimination in rates, the Georgia Commission cannot order an intrastate rate which would discriminate against other intrastate rates, and the fact that the rate ordered was originally established by the railroad to promote a new industry and subsequently withdrawn, does not affect the rule.

3. **Carriers ⊙═13(2), 18(6)—Rate on fetilizer material held discriminatory.**

    An intrastate rate on fertilizer material originally granted by a railroad to establish a new industry and which was less than one-half the rate prescribed by the state commission for similar hauls of the same material in the same quantities in other places, some of which are competitors in the market, to the place to which the rate in controversy was granted, is discriminatory, and the order for its enforcement may be enjoined, regardless of whether it is unremunerative.

4. **Carriers ⊙═18(6)—Carrier held not entitled to temporary injunction against order continuing long-established rate.**

    A carrier which had originally established a rate for transportation of two commodities between designated points which had existed for 20 years, except as affected by the horizontal increases and reductions during

government control, and which had acquiesced for more than a year in an order of the state commission continuing that rate in effect, and made no showing that any considerable damage would be suffered by the refusal of a preliminary injunction, is not entitled to a preliminary injunction to restrain the enforcement of that rate by the state commission, where the answer of the Commission averred it was about to formulate a general revision of this and other rates.

In Equity. Suit by the Atlantic Coast Line Railroad Company against Paul B. Trammell and others, to enjoin the enforcement of an order of the Georgia Railroad Commission establishing intrastate rates. On motion for temporary injunction. Injunction granted as to two of the rates complained of, and denied as to the other two.

See, also, 281 Fed. 321.

Alston, Alston, Foster & Moise, of Atlanta, Ga., for complainant.

E. J. Reagan, of McDonough, Ga., and J. Prince Webster, of Atlanta, Ga., for defendants.

. Before KING, Circuit Judge, and SIBLEY and BARRETT, District Judges.

KING, Circuit Judge. When the fertilizer factory now operated by the Blackshear Manufacturing Company was about to be built a number of years ago, a rate on bulk acid phosphate and fertilizer material, including kainit and pyrites, of 60 cents per ton, was agreed to and put in by the Savannah, Florida & Western Railway Company over its line from Savannah, Ga., to Blackshear, Ga., a distance of 87 miles. This railway became thereafter a part of the Atlantic Coast Line, and this rate, which had been adopted by orders of the Georgia Railroad Commission, the former name of the Georgia Public Service Commission, was continued in force until the operation of the railroads was assumed in December, 1917, by the United States government. This rate was raised by the 25 per cent. increase ordered by the Director General of Railroads, shortly after government control of railroads was assumed during the World War, to 80 cents. On February 29, 1920, the last day of such control, there was filed with the Interstate Commerce Commission a tariff of rates which increased said rates to $1.80 on bulk acid phosphate and $2.03 on fertilizer materials, after taking into account the 25 per cent. increase allowed by the Interstate Commerce Commission and Georgia Railroad Commission and the subsequent 10 per cent. reduction ordered. For some unexplained cause (stated by complainant to be due to an oversight) no change was made in the rate on kainit and pyrites, which after the above increases and 10 per cent. reduction is 90 cents per ton.

In the fall of 1920, the Railroad Commission refused the application of the Blackshear Manufacturing Company for a change of the rate on fertilizer materials from that put into effect by action of the Director General in February, 1920, upon the ground that the 90-cent rate thereon from Savannah to Blackshear was plainly preferential, and that, this old rate having been abolished, its reinstitution by the Georgia Commission would be illegal. In 1921, the commission refused an application of the Atlantic Coast Line Company to

raise the rate on kainit and pyrites from 90 cents per ton to $2.00 and $1.77, respectively, per ton. On December 19, 1922, said commission by order required the complainant to establish not later than January 15, 1923, the old rate of 90 cents per ton in carload lots, minimum 30,000 pounds, on fertilizer materials from Savannah to Blackshear.

This bill is filed to enjoin the enforcement of said order and also the continued enforcement of the rate of 90 cents per ton on kainit and pyrites. The bill seeks to enjoin these rates as being unjust and unreasonable, unduly discriminating against other kinds of traffic and other localities, and as an unjust preference to Blackshear; also as unjustly and unduly discriminating against interstate and foreign commerce and in favor of Savannah against other ports of entry, such as Brunswick, Ga., and Jacksonville, Fla.; also as not yielding to complainant a reasonable return on the traffic to which they apply, and thus taking its property for public use without due compensation, in violation of the Fourteenth Amendment of the Constitution of the United States.

[1] So far as the bill complains that this intrastate rate from Savannah to Blackshear unduly discriminates against interstate commerce and interstate rates, defendant insists that before a court will have jurisdiction to grant an injunction complaint should be made to the Interstate Commerce Commission and the matter be considered by them. It contends that this has been held in the Minnesota Rate Case, Simpson v. Shepard, 230 U. S. 352, 419, 33 Sup. Ct. 729, 57 L. Ed. 1511, L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18, and also in the case of Houston & Texas Ry. v. United States, 234 U. S. 342, 357, 34 Sup. Ct. 833, 58 L. Ed. 1341; that the Transportation Act of 1920 (41 Stat. 456) as completely vests in the Interstate Commerce Commission the jurisdiction to ascertain whether an intrastate rate constitutes an undue, unreasonable or unjust discrimination against interstate commerce as it vests in said commission the right to pass upon questions of discrimination as between interstate rates; and that, as where one complains that an interstate rate works discrimination he must in the first instance apply to the Interstate Commerce Commission for relief (Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 441, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Director General v. Viscose Co., 254 U. S. 498, 41 Sup. Ct. 151, 65 L. Ed. 372; Great Northern Ry. Co. v. Merchants' Elevator Co., 42 Sup. Ct. 477, 66 L. Ed. 943), so where he claims that an intrastate rate works such discrimination against interstate or foreign commerce, application should be made under the provisions of the Transportation Act in the first instance to the Interstate Commerce Commission, and that therefore this bill should be dismissed.

If the bill relied alone on the alleged discrimination against interstate commerce, we would hold that application should have been first made to the Interstate Commerce Commission. In the absence of any averment of such application and action by it, we think that the bill so far as based on such alleged discrimination would fail. But this bill does not rely alone upon the alleged discrimination against interstate or foreign commerce, but insists the rate is unjust and un-

reasonable as between intrastate rates on the same commodities, for similar hauls, for like distances, and under substantially the same conditions, and also that the rate does not afford the carrier substantial compensation for the service rendered, and is therefore a taking of its property without due process of law. The rate of 90 cents appears to have been originally put in by an agreement between the parties and to have become a commission rate only through operation of the orders and rules of the commission, which adopted rates voluntarily put in by the parties.

[2] The power of the Railroad Commission of Georgia is to prescribe just and reasonable rates and rules and regulations which will prevent discrimination. Code of Georgia 1910, § 2630. Unjust discrimination by a railroad in its rates or charges of toll or any compensation for the transportation of passengers or freight of any description is made a misdemeanor. Code of Georgia 1910, § 2629. It would seem quite clear, therefore, that a rate which works a discrimination could not be ordered by the commission under its power to prescribe just and reasonable rates.

That a railroad company might put in a nonremunerative rate for the purpose of promoting a new or established industry would not authorize a commission, where such a rate had been withdrawn and another rate lawfully established, to restore the original rate, under a power limited to prescribing just and reasonable rates. Atchison, T. & S. F. Ry. Co. v. Interstate Commerce Commission (Com. C.) 190 Fed. 591, 594. That a railroad cannot be compelled to retain a rate which is unreasonably low, because it was originally put in to promote a business in a locality, even though the increase of the rate might be hurtful to that business, the increased rate not being itself unreasonable, and the lower rate being discriminatory as to other places, has been decided by the Supreme Court of the United States. Southern Pacific Co. v. Interstate Commerce Commission, 219 U. S. 433, 443, 31 Sup. Ct. 288, 55 L. Ed. 283.

[3] In this case, the 90 cents per ton rate from Savannah to Blackshear on fertilizer material has been pronounced by the defendant commission to be unduly preferential and illegal. The evidence shows that it is not one-half of the rate prescribed by the defendant commission for similar hauls of the same material in the same quantities to other places, some of which are competitors in the market to Blackshear. It has been urged that the rate to Blackshear is in the nature of a milling in transit rate. Even if this is conceded, it is not shown wherein the haul of like materials to manufacturers at other points in the state should not be considered likewise milling in transit rates, so that this does not relieve the rate from its discriminatory character. Furthermore, the testimony of Mr. Brantley before the Railroad Commission shows that quite a part of his fertilizer is sold to farmers in the vicinity, as to which manufactured product there is no further railroad transportation. If the commission rate is unjust and unreasonable, either because discriminatory or because it is too low, the effect of it is to deprive the railroad company of the increased revenue which a higher rate will afford. It therefore has a direct pecuniary interest in the rate and in the prevention of its taking effect.

Assuming that the intrastate rates for like hauls to other points in this state are only a reasonable compensation for the service rendered, it would seem that the 90-cent rate was not a reasonable compensation; but, without deciding that question, it is sufficient to say, that the action of the commission is without authority and its rate illegal because entailing a marked discrimination. We therefore think that the order of the commission of December 19, 1922, should be enjoined.

[4] As to the order passed in 1921, refusing to raise the rate on kainit and pyrites, this rate, as modified by the increases and deduction above stated, has been in force for over 20 years. The order complained of refusing its increase has been acquiesced in for considerably over a year. The answer of the commission indicates that it is about to formulate a general revision of all intrastate rates including the rate in question. It is not shown that any considerable damage will be suffered by the complainant by the refusal of this preliminary injunction as to this rate. In view of its acquiescence in said rate and particularly its acquiescence in the order of the commission refusing to raise the same, under the present state of the proof, it would not seem that the grant of a preliminary injunction is now warranted.

An order granting a temporary injunction as to the commission's order of December 19, 1922, and denying it as to the existing rate on kainit and pyrites, may be entered.