PENNSYLVANIA RAILROAD COM-
PANY, Petitioner

v.

UNITED STATES of America and Interstate Commerce Commission.

Civ. A. No. 26169.

United States District Court
E. D. Pennsylvania.

Dec. 1, 1961.

William F. Zearfaus, Philadelphia, Pa., for plaintiff; Paul F. McArdle, Washington, D. C., of counsel.

William H. Orrick, Jr., Asst. Atty. Gen., Walter E. Alessandroni, U. S. Atty., Philadelphia, Pa., Donald B. MacGuineas, Charles Donnenfeld, Attys. Dept. of Justice, Washington, D. C., for defendant the United States.

KRAFT, District Judge.

The history of this case sufficiently appears in the opinion on the appeal from the Court of Claims in the same matter. Pennsylvania Railroad Co. v. United States, 363 U.S. 202, 80 S.Ct. 1131, 1132, 4 L.Ed.2d 1165 (1960):

"In 1941 and 1942 the United States made 75 shipments of iron and steel over the Pennsylvania Railroad intended for export from the port of New York to Great Britain. War conditions prevented exportation from New York. This caused a dispute about applicable transportation charges since the Pennsylvania had in effect tariffs for 'domestic rates' that were higher than 'export rates.' Since the goods were not exported as planned the Railroad billed the United States for the higher domestic rates which the Government paid because required to do so by § 322 of the Transportation Act of 1940, 54 Stat. 955, 49 U.S.C. § 66, 49 U.S.C.A. § 66. Later, under authority of the same section, the General Accounting Office deducted from other bills due the Railroad the difference between the higher and lower rates, claiming that the higher domestic rates were inapplicable, unreasonable and unlawful. The Railroad then brought this action in the Court of Claims to recover the amount deducted.

"Properly relying on our holding in United States v. Western Pacific R. Co., 352 U.S. 59, 62–70 [77 S.Ct. 161, 1 L.Ed. 2d 126], the Court of Claims suspended proceedings to enable the parties to have the Interstate Commerce Commission pass on the reasonableness of the rates. After hearings the Commission found and reported that the domestic rates were 'unjust and unreasonable' as to 62 of the shipments but 'just and reasonable' as to 13. 305 I.C.C. 259, 265.''

The Railroad then invoked the jurisdiction of this Court under 28 U.S.C. §§ 1336, 1398, and 49 U.S.C.A. § 17(9), to enjoin and set aside the order. It is unnecessary to review here the action of the Court of Claims which resulted in the appeal to the Supreme Court. The case is now before us on cross motions for summary judgment.

We are concerned here only with the rates on the 62 shipments. As a matter of interest, however, we point out that the Commission applied the higher domestic rates to the 13 shipments because as to them it found no evidence to support the Government's contention that cargo space had been arranged prior to shipment.

The Commission's report states that, "The complainant (the Government) concedes that the domestic rates charged were applicable." At another place the report states: "The complainant does not assail the reasonableness of the domestic rates, as such, but alleges that charges based thereon, in view of the fact that the shipments ultimately were exported and of the extraordinary circumstances shown in connection therewith, were unjust and unreasonable to the extent that they exceeded those based on the export rates from and to the same points." The Government's position, as thus accurately stated, seems to us to embody an inner contradiction. In United States v. Western Pacific Railroad Co., 352 U.S. 59, 68, 77 S.Ct. 161, 167, 1 L.Ed. 2d 126, the Supreme Court referred to

588

"the artificiality of the distinction between the issues of tariff construction and of the reasonableness of the tariff as applied," and used language equally descriptive of the Government's position in the instant case:

"For the Government's thesis on the issue of reasonableness is not that the rate on incendiary bombs is, in general, too high. It argues only that the rate 'as applied' to these particular shipments is too high— i. e., that since the expenses which have to be met in shipping incendiaries have not been incurred in this case, the carriers will be making an unreasonable profit on these shipments. This seems to us to be but another way of saying that the wrong tariff was applied. In both instances the issue is whether the factors which call for a high rate on incendiary bomb shipments are present in a shipment of bomb casings full of napalm gel but lacking bursters and fuses."

The Commission's conclusions seem to us to be equally inconsistent. Its report states: "The tariff in which the export rates were published contained a provision that such rates would apply only if traffic moving thereunder did not leave the possession of the carrier at the port to which initially consigned. The shipments were not exported through the port of New York, and did ultimately leave the possession of the originating carrier prior to exportation. Thus, the conditions of the tariff rule were not fully complied with, and the export rates were not applicable on these shipments to New York." Nevertheless, the Commission proceeded, in effect, to apply these very export rates: "We find that on 62 of the shipments here concerned * * * the charges based on the domestic rates were unjust and unreasonable to the extent that they exceeded charges based on the rates contemporaneously maintained on export shipments from and to the same points."

So far as we are advised, no one challenged the inherent reasonableness of the domestic rates. As the Commission pointed out, the Government did not attack "the reasonableness of the domestic rate, as such." In consequence, we think the only issue properly before the Commission was which rate was applicable to the shipments in question. The situation seems to us to be in no way distinguishable from that in United States v. Chesapeake and Ohio Railway Co., 224 F.2d 443 (4th Cir. 1955), a closely analogous case. As the Court there viewed the issue (p. 444):

"The question was not the reasonableness of rates, which everyone conceded to be reasonable, but which rate was applicable to the shipment under the circumstances of the case, a question which the court was competent to decide."

On appeal, the Supreme Court agreed with the first part of this statement (352 U.S. 77, 80, 77 S.Ct. 172, 173):

"Unlike the Court of Claims in United States v. Western Pacific R. Co., supra, the Court of Appeals, correctly we think, regarded the questions of whether the domestic tariff applied to these shipments, and whether it was reasonable if so applied, as simply two ways of stating the same underlying problem."

However, the Court held that the question of which tariff applied, domestic or export, might be one for the Commission, as the Court of Appeals should determine upon a full record (p. 80, 77 S.Ct. p. 173).

In the case at bar, the Commission ruled that the domestic rate applied, but that such rate was "unjust and unreasonable" to the extent that it exceeded the export rate. It did not find that the domestic rate was unjust and unreasonable in and of itself for the transportation service rendered. To the contrary, the Commission seems to have based its conclusions on several extraneous factors, i. e., that the shipments were ultimately exported from ports other than New York; that vessel space had been reserved (as respects 62 shipments) prior to shipment to New York; that on December 28, 1942, after these shipments

had moved, the Railroad established its so-called "frustrated freight tariff," which applied the export rate in such situation as this.

 We believe that the Commission's action was without support in the law or the evidence, and exceeded its statutory powers. We recognize, of course, that all charges for transportation service must be just and reasonable. 49 U.S. C.A. § 1(5). It is equally clear, however, that the reasonableness of a rate must be determined on the basis of transportation considerations, and not on such extraneous factors as the "equities" of a given situation. In Atchison, T. & S. F. Ry. Co. v. Interstate Commerce Commission, 190 F. 591 (Commerce Ct. 1911), the Court held void as beyond the powers delegated to the Commission an order based primarily on assumed authority to protect an industry against foreign competition. The opinion carefully defined the scope of the Commission's authority to prescribe rates (p. 594):

> "The authority granted it under section 15 of the act to regulate commerce to prescribe reasonable rates when it shall be of the opinion that the rates fixed by the carrier are unreasonable does not confer absolute or arbitrary power to act on any considerations which the commission may deem best for the public, the shipper, and the carrier. Its order must be based on transportation considerations. While it may give weight to all factors bearing either on the cost or the value of the transportation services, it must disregard as well the demand of the shipper for protection from legitimate competition, domestic or foreign, for unlimited markets, or for the enforcement of equitable estoppels arising from a justifiable expectation that past rates will be maintained, as the demand of the carrier for the maximum rate under which the tariff will move freely."

To the same effect, see Southern Pacific Company v. Interstate Commerce Commission, 219 U.S. 433, 31 S.Ct. 288, 55 L.Ed. 283 (1911); Atlantic Coast Line R. Co. v. Trammell, 287 F. 741 (D.C.N.D. Ga.1923).

It is unavailing to say that the Railroad suffered no additional expense or inconvenience by reason of the non-export of the shipments from New York. The same might be said of a shipment not originally intended for export. It is recognized on all sides that the differential between export and domestic rates is not based on any distinction in the quantity or character of the services rendered. J. G. Boswell Co. v. Atchison T. & S. F. Ry. Co., 216 I.C.C. 522.

### Order

Now, November 30, 1961, it is ordered and adjudged that the order of the Interstate Commerce Commission with respect to the 62 shipments be, and it is, enjoined and set aside as without support in the law or the evidence and in excess of its statutory powers; and the matter is remanded to the Commission for further action consistent with this order.