BREWSTER, J., joins in this opinion.

---

**SANANTEX OIL CO., and J. L. Burch, Jr., d/b/a Burch Traffic Service, Appellants,**

v.

**Guy A. THOMPSON, Trustee, International Great Northern Railroad, Debtor, Appellee.**

No. 12860.

Court of Civil Appeals of Texas.

San Antonio.

May 25, 1955.

Rehearing Denied June 22, 1955.

Saunders & Saunders, San Antonio, for appellants.

Kampmann & Kampmann, San Antonio, for appellee.

POPE, Justice.

The appellee carrier sued a shipper and his claim agent to recover a sum of money the carrier had previously refunded the shipper because of its mistaken belief that it had overcharged the shipper. The trial court gave judgment in favor of the carrier for the amount of the refund. Charges for freight carried in interstate commerce must be enforced by actions brought within two years from the time the cause of action accrued. Title 49 U.S.C.A. § 16, Par. 3. Admittedly, the suit was brought more than two years after the freight charges were originally due. The carrier, however, insisted and the trial court held the cause of action was not for freight charges, but was one for money received. If the action was one for money received, the Texas

statute of limitations would apply instead of the federal statute, and the action would not be barred until two·years from the date of the refund. The cause of action was brought within two years from the date of the refund. Hence the question posed by this appeal is whether, as the carrier urges, the carrier's action for the refund was one for money received, or, as the shipper urges, was one for freight which is now barred.

From January 8 to June 12, 1951, Sanantex Oil Company shipped several carloads of petroleum in barrels. The shipper paid the charges in full. The shipper then filed three claims for refunds on the grounds that the tariffs were incorrectly interpreted by the carrier. The carrier, on the basis of the claims made two refunds totalling $559.78, one on December 24, 1951, and the other on December 27, 1951. The carrier refunded the further sum of $159.40 on March 27, 1953.

In the meantime, during 1952, the Interstate Commerce Commission made an interpretation of the tariff. Under that ruling, the original charge made by the carrier and paid by the shipper was a correct interpretation of the tariffs and the refunds should not have been made by the carrier. The carrier filed this suit on December 23, 1953, to recover the refunds, which amounted to $719.18. These dates show that this action was brought more than two years from the date the freight charges were originally due.

In our opinion, this was an action for freight under the intent of Title 49, § 16, Par. 3. The matter has been before several courts. As we understand the cases, the limitation statute with reference to interstate shipments is jurisdictional, it can not be waived, and must be rigidly adhered to in the interest of uniformity, which is one of the objects of the statute. Midstate Horticultural Co., Inc., v. Pennsylvania R. Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96; Strawberry Growers' Selling Co. v. American Ry. Express Co., 5 Cir., 31 F.2d 947. The carrier's contention that a suit for a refund of freight charges was the basis of a new cause of action apart from the original claim for freight was rejected in Wisconsin Bridge & Iron Co. v. Illinois Terminal Co., 7 Cir., 88 F.2d 459, 462. In that case, after delivery, the carrier and shipper disagreed about the interpretation of certain rates. The carrier notified a creditor of the shipper to withhold the sum of $9,342, which was the amount the carrier claimed owing on the freight. The matter was presented to the I. C. C., which first ruled that the shipper owed $810.50 only. The carrier then consented to the release to the shipper of the balance of the withheld funds. The I. C. C. then changed its mind and ruled that the shipper owed $8,913.21. In the meantime limitations had run, and to avoid that, the carrier urged that the suit was actually for recovery of a mistaken refund of the amount that had been surrendered to the shipper after the first ruling of the I. C. C. In rejecting the argument the Court stated:

"Appellee's cause of action arose out of appellant's failure to pay charges due on the shipment of goods. According to·the mandate of section 16(3) (e), 49 U.S.C.A. § 16(3)(e), a cause of action in respect of a shipment of property shall be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after. Hence events occurring subsequent to the delivery may not be relied upon to extend the period within which the suit must be brought."

Kurn v. Pittsburgh Plate Glass Co., D.C., 48 F.Supp. 574, 576, also struck down the contention that a carrier's suit for the recovery of refunds was one for money received. There are other points in that case, but in discussing the nature of such actions, it is clearly held that the suit is for freight charges under the Transportation Act. The opinion states:

"Here· the payments were made under a tariff duly filed and appropriately authorizing them. The tariff in turn was authorized by the statute. * * * The payments made under the tariff were assumed by the parties

to be for a service which fell within the authorization of the statute i.e. that they were for a part of the line haul service and merely represented the value thereof. The inescapable result is that the payments to the shipper actually constituted the return to it of a part of the charges for the line haul. * * * The compulsion of the Transportation Act that interstate carriers must collect the proper rate is the moving cause of these actions."

The facts of that case show that by another proceeding the tariff was cancelled by court action, the effect of which determined that the tariff was void and refunds were not proper. However, it was stated that the carrier must comply with the existing tariffs until they were cancelled, and that the cause of action or right to demand a return of the sums refunded did not arise until the tariffs were in fact cancelled. That situation is not present in this case, since the tariffs, though misunderstood and disputed, were not cancelled, and the refunds made by the carrier were contrary to the tariffs which were valid tariffs. We understand the case to hold that the nature of an action like the present one is that of a suit for freight charges and not for money received, and that the federal statutes apply rather than the state law.

Vicksburg, S. & P. R. Co. v. Paup, 5 Cir., 47 F.2d 1069, also rejected the argument that a suit for mistaken refunds was for money received, and in doing so stated that the policy of the law with reference to interstate shipments was to avoid situations which may arise "designedly or by mistake", which would have different state laws controlling over the dealings between shippers and carriers.

Arrayed against these authorities are T. M. Partridge Lumber Co. v. Michigan Cent. R. Co., 8 Cir., 26 F.2d 615, and Galveston, H. & S. A. R. Co. v. Lykes Bros., D.C., 294 F. 968. The latter case has never been cited, except in the Partridge case, in support of its statement that such suits are for money received, and the later authorities are to the contrary. The Partridge case is not in point and is cogently distinguished in Kurn v. Pittsburgh Plate Glass Co., supra. In the Partridge case the majority of the Court treated the suit as one for money received. The suit, however, was for the recovery of an excess sum which had been paid by reason of a mathematical and clerical error rather than an improper application or misunderstanding of the statute and tariffs. Judge Van Valkenburgh, in a concurring opinion in the Partridge case, recognizes this distinction and asserts the purpose of the federal statute is to compel uniformity and avoid rebates rather than to provide an ordinary limitation statute.

The carrier makes a compelling argument that limitations against its cause of action should not be held to run until it made the refund, for until that event it had no cause of action at all. The force of that argument must, however, yield to the broader and more stringent purposes of the federal statute. To hold otherwise would mean that each time disputed rates between a carrier and shipper were paid, subsequent clarification of the dispute would extend the time within which to sue and would displace the control of the federal statute and place the dispute under the varying state laws, the very thing the federal statute seeks to avoid in the case of interstate commerce rates.

This suit is one for the recovery of freight rates rather than for money received, and since more than two years have elapsed since the delivery of the property shipped, the carrier's suit for refund is barred. The judgment is accordingly reversed and rendered that the plaintiff take nothing.