# UNITED STATES *v.* CHESAPEAKE & OHIO RAILWAY CO.

No. 19.   Argued October 15, 1956.—Decided December 3, 1956.

*Morton Hollander* argued the cause for the United States.  With him on the brief were *Solicitor General Rankin, Assistant Attorney General Doub* and *Melvin Richter.*

*Meade T. Spicer, Jr.* argued the cause and filed a brief for respondent.

MR. JUSTICE HARLAN delivered the opinion of the Court.

This case presents questions similar to those involved in *United States* v. *Western Pacific R. Co., ante,* p. 59, decided today.

In 1941 and 1942 the Government shipped from Pontiac, Michigan, to Newport News, Virginia, over the respondent's lines, various military supplies destined for China, via the port of Rangoon, Burma. This intended exportation was frustrated by the fall of Rangoon to Japanese military forces on March 8, 1942. The Government therefore took possession of the shipments at Newport News, reshipped them about three months later to storage centers in Pennsylvania and New Jersey, and more than a year later again reshipped some of the goods to various points on the Pacific Coast, whence they were exported to Calcutta, India. Had the original purpose of a shipment to China been accomplished, the *export* rate provided in Item 23030 of Tariff No. 218–M [1] would have applied to the transportation between Pontiac and Newport News. However, when that shipment was frustrated, the respondent billed the Government at the higher

---

[1] "APPLICATION OF EXPORT RATES TO NORTH ATLANTIC SEABOARD PORTS OF EXPORT

"The rates named in this tariff, or as same may be amended, and designated as 'Export Rates' will apply only on traffic which does not leave the possession of the carrier, delivered by the Atlantic Port Terminal carriers direct to the steamer or steamer's dock upon arrival at the port or after storage or transit has been accorded by the port carrier at the port under tariffs which permit the application of the export rates, and also on traffic delivered to the party entitled to receive it at the carrier's seaboard stations to which export rates apply, which traffic is handled direct from carriers' stations to steamship docks and on which required proof of exportation is given. (C. F. A. Inf. 8179, 13607)"

*domestic* rate.[2] The Government paid these bills as rendered, but subsequently, on post-audit by the General Accounting Office, readjusted the charges to the lower export rate, deducting the difference from subsequent bills of the carrier for other transportation services.[3] Thereafter the respondent sued the United States in the District Court for the Eastern District of Virginia under the Tucker Act[4] to recover the amount of these deductions. The District Court gave judgment for the respondent,[5] the Court of Appeals affirmed,[6] and we granted certiorari.[7]

The Court of Appeals, following its earlier decision in *United States* v. *Chesapeake & Ohio R. Co.*, 215 F. 2d 213, held "that the intention to export to China was abandoned and that the movement which began at Pontiac, Michigan, as an export was converted by the shipper into a domestic shipment"; hence the domestic rate applied. It further held that the District Court had properly denied the Government's request for a referral to the Interstate Commerce Commission of the question whether the domestic rate, if applied to these shipments, would be reasonable. As to this the Court of Appeals said that the "question was not the reasonableness of rates, which everyone conceded to be reasonable, but which rate was applicable to the shipment under the circumstances of the case, a question which the court was competent to decide." Therefore, it concluded that there were no "administrative questions" for the Commission to determine. Further, without questioning the timeliness of the

---

[2] Central Freight Association, Freight Tariff No. 490–A.

[3] This procedure was authorized by § 322 of the Transportation Act of September 18, 1940, 54 Stat. 955, 49 U. S. C. § 66.

[4] 28 U. S. C. § 1346 (a) (2).

[5] The District Court filed no written opinion. It rendered a short oral opinion which appears at pages 40–41 of the record.

[6] 224 F. 2d 443.

[7] 350 U. S. 953.

respondent's suit under the Tucker Act,[8] the Court of Appeals held that in any event referral to the Commission of the question of the reasonableness of the domestic tariff as applied to these shipments was barred by the two-year statute of limitations of the Interstate Commerce Act.[9]

Unlike the Court of Claims in *United States* v. *Western Pacific R. Co., supra,* the Court of Appeals, correctly we think, regarded the questions of whether the domestic tariff applied to these shipments, and whether it was reasonable if so applied, as simply two ways of stating the same underlying problem. Hence we face the same question as the one we have dealt with in the *Western Pacific* case, *supra,* namely: does the issue of tariff construction, which the Court of Appeals regarded as one for the court, involve such acquaintance with rate-making and transportation factors as to make the issue initially one for the Interstate Commerce Commission, under the doctrine of primary jurisdiction? In this instance we cannot say positively whether or not there should have been a referral to the Commission. The Government, treating the issues of "construction" and "reasonableness" as separable, did not question the Court of Appeals' holding that the domestic tariff applied, but argued only that the tariff was unreasonable as applied to these shipments. The parties, therefore, have not briefed or argued the factors making for or against the application of the domestic rather than the export tariff. Consequently, we do not know what kinds of factors are involved, and we therefore cannot say on this record whether the issue of tariff con-

---

[8] The respondent's cause of action accrued no later than the summer of 1946, when the Government deducted the difference between the domestic rate and the export rate. The respondent filed its suit on March 10, 1952. On the assumption that the Tucker Act applies (see our opinion in the *Western Pacific* case, *ante,* p. 59, at pp. 70–71), the suit was timely brought.

[9] 24 Stat. 384, as amended, 49 U. S. C. § 16 (3).

struction should have been referred to the Commission. We think this question should be determined by the Court of Appeals upon a full record, which would no doubt include consideration of the factors shown by the record in the earlier case which it followed here,[10] and which is not before us.[11]   For the reasons given in our opinion in the *Western Pacific* case, *supra,* we hold that referral to the Commission would not be barred by the § 16 (3) statute of limitations.

We shall therefore reverse the judgment below and remand the case to the Court of Appeals for further proceedings not inconsistent with this opinion and with our opinion in *United States* v. *Western Pacific R. Co., supra,* decided this day.

*It is so ordered.*

MR. JUSTICE DOUGLAS dissents from a reference of these matters to the Interstate Commerce Commission, since he is of the view that the principles of *Great Northern R. Co.* v. *Merchants Elevator Co.,* 259 U. S. 285, are applicable here.

MR. JUSTICE REED and MR. JUSTICE BRENNAN took no part in the consideration or decision of this case.

---

[10] 215 F. 2d 213.

[11] The Government suggests that in comparable situations the Commission has decided that the export rate should apply.   See *C. B. Fox Co.* v. *Gulf, Mobile & Ohio R. Co.,* 246 I. C. C. 561; *River Petroleum Corp.* v. *Yazoo & M. V. R. Co.,* 258 I. C. C. 1; *Mid-Continent Petroleum Corp.* v. *Illinois Central R. Co.,* 258 I. C. C. 422; *Products-From-Sweden, Inc.* v. *Lehigh Valley R. Co.,* 263 I. C. C. 760. Respondent, in turn, cites *California Texas Oil Co.* v. *Bessemer & Lake Erie R. Co.,* 264 I. C. C. 147; *Pacific Chemical & Fertilizer Co.* v. *Pennsylvania R. Co.,* 268 I. C. C. 468; and *War Materials Reparations Cases,* 294 I. C. C. 5.   We express no opinion as to the effect of these decisions, for we think their relevancy to the situation at hand should be left to the Court of Appeals in the first instance.   See our opinion in the *Western Pacific* case, *ante,* p. 59.