**EASTERN FREIGHT WAYS, Inc.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

United States District Court
S. D. New York.
Sept. 20, 1957.

———◆———

Goldman & Drazen, New York City, for plaintiff, Daniel M. Shientag, New York City, of counsel.

Paul W. Williams, U. S. Atty., New York City, for the United States, Edwin J. Wesely, Asst. U. S. Atty., New York City, of counsel.

FREDERICK VAN PELT BRYAN, District Judge.

Defendant United States moved for summary judgment, pursuant to Rule 56, F.R.Civ.P., 28 U.S.C., on the ground that the action is barred by the six year statute of limitations contained in the Tucker Act, 28 U.S.C. § 2401(a). Subsequent to the argument of the motion the Government raised an additional

ground for summary judgment, asserting that in view of dicta in footnotes in United States v. Western Pacific R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126, and United States v. Chesapeake & Ohio Railway Co., 352 U.S. 77, 77 S.Ct. 172, 1 L.Ed.2d 140, decided subsequent to the argument of the motion, the action should be held to be barred by the two year statute contained in the Interstate Commerce Act, 49 U.S.C.A. § 304a(1).

Plaintiff is an interstate motor carrier. Its complaint alleges a contract with the Government, made in November 1941, to carry freight and commodities to and from Schenectady and New York, Jersey City and Brooklyn at regular tariff rates promulgated by the Interstate Commerce Commission. It sues to recover sums deducted by the Government as alleged overcharges under this contract from bills due for subsequent and different transportation not arising out of and having no connection with the contract alleged. These sums were deducted by the Government long after the plaintiff's original bills for the transportation performed under the alleged contract had been paid in full after a post-audit of such bills by the Government pursuant to Section 322 of the Transportation Act of 1940, 49 U.S.C.A. § 66. The transportation services were performed and the bills were paid by the Government between 1941 and 1945. The deductions were made between September 15, 1947 and February 3, 1953, the date of the commencement of the action.

This controversy arises out of the following circumstances:

In September 1941 plaintiff issued quotations to the Government covering shipments to and from Schenectady and New York, Brooklyn and Jersey City at a single rate to apply to all commodities irrespective of the tariff rates promulgated by the Interstate Commerce Commission. The quoted rates were higher than the published tariffs with respect to some commodities and lower with respect to others. Shortly thereafter the Government advised the plaintiff that it did not have authority to pay more than the published tariff rates with respect to any commodity and that the contract was therefore not acceptable. On November 1, 1941 plaintiff sent a notice to the Government purporting to cancel its quotations though this notice was incorrectly worded.[1] Thereafter it billed the Government at the published tariff rates except in rare instances covered by special quotations, and the Government in turn paid all of its bills through September 15, 1947.

Beginning in 1943, however, the Government, after delayed post-audit of some of these bills, advised plaintiff of various small claims for refund of alleged overpayments on a few specific invoices, taking the position, in substance, that while plaintiff could not charge in excess of the published tariff rates on its original but cancelled quotations, nevertheless it was bound to charge less than the published tariff rate where its quotations had so provided. In other words, the Government was prepared to take the benefits of the plaintiff's allegedly cancelled quotations of September 1941 where they were at less than tariff rates, but refused to accept the burden of the same quotations where they were more than tariff rates on the ground they were illegal. Plaintiff disputed the Government's claims and did not make the refunds demanded.[2] On September 15, 1947, by which time a number of such claims had accumulated on post-audit, the General Accounting Office wrote to the plaintiff submitting a list of accumulated items for alleged overcharges made between 1941 and 1945, comprising some 43 items totalling $5,375.14, and advised that in default of immediate refund by

---

1. The Government questions the effect of this notice of cancellation but this is not involved on this motion.

2. There is a controversy as to whether the plaintiff in fact paid two small refund claims of $9.60 and $138.79 in 1944. But this controversy does not affect the substance of the claim now made and can be resolved at the trial.

the plaintiff the unrefunded amounts would be deducted from monies otherwise due it. Sometime thereafter the Government began to apply these and other claims for overcharges, all arising from transportation performed and paid for between 1941 and 1945, against its current obligations for entirely different shipments which were admittedly due the plaintiff, and continued to do so until shortly before the action was begun. Plaintiff claims that these deductions, totalling some $10,000, were entirely without justification.

The first question presented on this motion is when the plaintiff's claims for the allegedly unjustified deductions made subsequent to September 15, 1947 accrued, since the date of their accrual will determine when the applicable statute of limitations commenced to run. The Government contends that these claims accrued at the various dates between 1941 and 1945, when the original transportation services were rendered. This, despite the fact that the plaintiff had been paid in full for all of these services and the deductions for alleged overpayments upon post-audit by the Government were made from amounts admittedly due to the plaintiff for other transportation services entirely different from and having no connection with the transportation services originally performed. In my view the Government's position on this score is wholly without merit.

Section 322 of the Transportation Act of 1940, 49 U.S.C.A. § 66, provides:

"Payment for transportation of the United States mail and of persons or property for or on behalf of the United States by any common carrier subject to chapters 1, 8, 12 and 13 of this title, or the Civil Aeronautics Act of 1938, shall be made upon presentation of bills therefor, prior to audit or settlement by the General Accounting Office, but the right is reserved to the United States Government to deduct the amount of any overpayment to any such carrier from any amount subsequently found to be due such carrier."

The transactions in the instant case follow the course contemplated by this section. Payment of the plaintiff's bills as rendered between 1941 and 1945 was made prior to audit or settlement by the General Accounting Office. Long thereafter the General Accounting Office made a post-audit and took the position that the Government had been overcharged on various of these bills. When the plaintiff received notice of the alleged overcharges it took the position that the Government Accounting Office was wrong and that there had been no overcharge. Thereafter the Government exercised the right reserved to it by Section 66 to deduct the amount of the alleged overpayment from the amounts subsequently due to the plaintiff for other and different transportation services.

When the Government paid the carrier for the transportation rendered in the 1941 and 1945 periods the transportation services had been fully performed and plaintiff had been fully paid. There was nothing further which the plaintiff was called upon to do or could do. It certainly had no right of action then against the Government. Nor did it have any right of action when the Government demanded refund of the alleged overpayments. It was not then out of pocket and nothing was due it from the Government. It was only when the Government deducted the overpayments from other amounts concededly due the plaintiff that the plaintiff suffered any injury or could take any action.

It may be noted that Section 66 places no time limit on the Government post-audit or the Government's right to deduct alleged overpayments. If the position taken by the Government here were correct, the Government could bar any rights which a carrier might have to contest the post-audit merely by delaying the post-audit, or deductions made pursuant thereto, until the statutory period of limitation had run against a non-existent claim of the carrier to be paid the

original transportation charges which it had already been paid. The post-audit and the deductions would then become absolutely incontestable and the carrier would be left without any remedy whatsoever no matter how erroneous or unjust the deductions were. I cannot assume that any such unconscionable result could have been intended by Congress in the absence of plain language to that effect in the statute. There is no such language. It seems plain that a carrier against whom an erroneous post-audit and consequent deduction was made would have a right of action to recover the amount so deducted which accrued when and only when the deduction was actually made.

The Government's reliance here on the well-settled rule that transportation charges accrue when the transportation services are rendered and that the statute of limitations on such charges runs from that date (see United States v. Wilder, 13 Wall. 254, 80 U.S. 254, 20 L. Ed. 681; Southern Pacific Co. v. United States, 67 Ct.Cl. 414, 422, certiorari denied 280 U.S. 567, 50 S.Ct. 26, 74 L.Ed. 620; Hughes Transportation, Inc. v. United States, D.C.E.D.S.C., 109 F.Supp. 373) is misplaced. Plaintiff here is not suing to recover charges for transportation rendered from 1941 to 1945 but for monies deducted and withheld by the Government from other sums due plaintiff, as plaintiff alleges, illegally and without justification. No case has been cited to me holding that such claims accrue when the original transportation has occurred and research has disclosed none. Such expressions as there are accord with the views I express here. For example, in Southern Pacific Co. v. United States, 62 Ct.Cl. 391, 401, the Court of Claims said:

"In the class of cases coming to this court, without exception the suit of the carrier is uniformly delayed far beyond the date of delivery of the shipment because, as previously observed, the freight charges due the carrier, as appears from the transportation requests in the bill of lading, are generally promptly paid, *and the carrier has no cause of action until the subsequent deduction is made by the accounting officer*." (Emphasis added.)

In United States v. Western Pacific R. Co., supra, the Supreme Court, referring to claims of carriers where the United States had initially paid the bills and subsequently readjusted that rate on post-audit said (352 U.S. at page 70, footnote 12, 77 S.Ct. at page 168):

"* * * it is impossible to say when the claims accrued as the record is silent as to when the post-audit readjustment was made."

The question remains whether the six year statute of limitations in the Tucker Act, 28 U.S.C. § 2401(a), or the two year statute of limitations in the Interstate Commerce Act, 49 U.S.C.A. § 304a, applies to plaintiff's cause of action. The Government concedes that it has been the rule for more than thirty years that the six year statute of limitations in the Tucker Act, rather than the statute of limitations contained in the Interstate Commerce Act, applies to claims against the Government by carriers for transportation services rendered. Southern Pacific Co. v. United States, supra; Seaboard Airline R. Co. v. United States, 83 F.Supp. 1012, 113 Ct.Cl. 437, certiorari denied 338 U.S. 848, 70 S.Ct. 88, 94 L. Ed. 519; Union Pacific R. Co. v. United States, 86 F.Supp. 907, 114 Ct.Cl. 714, certiorari denied 339 U.S. 930, 70 S.Ct. 664, 94 L.Ed. 1350.

The well-reasoned opinion of the Court of Claims in the Southern Pacific case sets forth clearly the unique position of the Government in its dealings with common carriers for the transportation of Government property and the cogent reasons why public policy requiring uniformity and equality of treatment between carriers and shippers does not apply to statutes of limitations governing suits by carriers against the Government. This opinion was carefully reviewed by the Court of Claims in the Seaboard case, which again concluded that this was the correct rule and so held

also in the later Union Pacific case to the same effect.

Moreover, as the Court of Claims pointed out in the Seaboard case [83 F. Supp. 1015]:

"* * * * Our decision in Southern Pacific Co. v. United States, supra, was rendered on June 14, 1926, 23 years ago. During all that time the correctness of the decision had not been questioned, although there had been many opportunities to do so. Also, it is to be presumed that Congress knew of the decision when it passed the Transportation Act of 1940. If it did, its failure to state explicitly that the limitation was intended to apply to suits against the Government is an indication that it did not intend it to so apply."

In 1949 Congress again amended the Interstate Commerce Act so as to extend the limitation of action, previously applicable to railroads, to common carriers by motor vehicle. 49 U.S.C.A. § 304a. Again Congress failed to state, and there was no implication, that the limitation was intended to apply against the Government. Here is a further indication that Congress did not intend the two year statute to apply.[3]

There is nothing in United States v. Western Pacific R. Co., supra, and United States v. Chesapeake & Ohio R. Co., supra, which would lead to a different conclusion. All that the Supreme Court said about the problem in these cases was that the soundness of the rule applying the six year or Tucker Act statute had been questioned but not challenged by the Government in the cases before the court, and that "we therefore do not pass on it." United States v. Western Pacific R. Co., supra, footnote 13 at page 71 of 352 U.S., at page 169 of 77 S.Ct.; see, also, United States v. Chesapeake & Ohio Railway Co., supra, footnote 8 at page 80 of 352 U.S., at page 173 of 77 S.Ct. This language affords no basis for overturning a well-settled rule of

thirty years standing which seems to me to be entirely sound.

Moreover, it may be noted that Section 304a applies only to actions by motor vehicle common carriers "for the recovery of their charges." As has been pointed out, the plaintiff's action here is not to recover its charges but to recover monies allegedly wrongfully and illegally withheld by the Government from amounts concededly due. Cases such as Midstate Horticultural Co., Inc. v. Pennsylvania Railroad Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96; Wisconsin Bridge & Iron Co. v. Illinois Terminal Co., 7 Cir., 88 F.2d 459; Sanantex Oil Co. v. Thompson, Tex.Civ.App., 280 S.W. 2d 252, and Thompson v. Milwhite Co., Tex.Civ.App., 292 S.W.2d 148, are not apposite. They involved neither the Government nor deductions made on post-audit such as are involved here.

The defendant's motion for summary judgment is therefore denied.

---

3. H.Rept. No. 766, 81st Cong., 1st Sess., (1949).