UNITED STATES of America, Appellant,

v.

T.I.M.E., Incorporated, Appellee.

No. 16738.

United States Court of Appeals
Fifth Circuit.

Jan. 30, 1958.

Rehearing Denied Feb. 25, 1958.

Heard L. Floore, U. S. Atty., A. W. Christian, Asst. U. S. Atty., Fort Worth, Tex., Melvin Richter, Alan S. Rosenthal, Attys., Dept. of Justice, Washington,

D. C., Geo. S. Leonard, Acting Asst. Atty. Gen., George Cochran Doub, Asst. Atty. Gen., for appellant.

W. D. Benson, Jr., Benson & Howard, Lubbock, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

RIVES, Circuit Judge.

T.I.M.E., Incorporated, a motor carrier, sued the United States under the Tucker Act[1] for unpaid transportation charges on shipments of freight. The United States asserted counterclaims upon which the district court held that it was entitled to $16,942.03, and that holding is not contested on appeal. This appeal involves solely the question of the correctness of the district court's determination that T.I.M.E. was entitled to a total of $14,414.82 on its claims.

The facts were stipulated. T.I.M.E. was a common carrier motor carrier operating generally between Oklahoma City, Oklahoma and Los Angeles, California via El Paso, Texas, under authority of the Interstate Commerce Commission. It transported some twenty shipments of scientific instruments under Government bills of lading. A typical shipment illustrates the issues with respect to all of the shipments: it originated at Tinker Air Force Base, Marion, Oklahoma, and was transported over the lines of T.I.M.E. and a connecting carrier to McClellan Air Force Base at Planehaven, California.

At the time, there were on file with the Interstate Commerce Commission the following tariffs to which T.I.M.E. was subject:

(1) Rocky Mountain Motor Tariff Bureau Tariff No. 5-A, M.F.-ICC No. 31, providing a double first-class through rate of $10.74 per cwt. on scientific instruments N.O.I. from Marion, Oklahoma to Planehaven, California.

(2) Southwestern Motor Freight Bureau Tariff No. 1-F, M.F.-ICC No. 141, providing a rate of $2.56 per cwt. on scientific instruments N.O.I. from Marion, Oklahoma to El Paso, Texas.

(3) Interstate Freight Carriers Conference Tariff No. 1-C, N.F.-ICC No. A-5, providing a rate of $4.35 per cwt. on scientific instruments N.O.I. from El Paso, Texas to Planehaven, California.

The through rate, $10.74, was thus considerably in excess of the sum of the intermediate rates, $6.91. There was, however, on file with the Commission the official issue of the Interstate Commerce Commission Tariff M.F.-3, Rule 4(i), which reads:

"(i) When a carrier or carriers establish a local or joint rate for application over any route from point of origin to destination, such rate is the applicable rate of such carrier or carriers over the authorized route, notwithstanding that it may be higher than the aggregate of the intermediate rates over such route."

The Government had paid the intermediate rates. The district court held that T.I.M.E. was entitled on its claims to a total of $14,414.82, the difference between the through rate and the aggregate of the intermediate rates.[2] The Government made some contention at the trial that the combination of the intermediate rates is applicable, but that position is not urged on appeal. The Government's main defense, which it continues to urge in this Court, is that the through rate is prima facie unreasonable and unlawful to the extent that it exceeds the aggregate of the intermediate rates, and that the proceedings should be stayed to enable the Government to obtain a determination from the Interstate Commerce Commission as to the reasonableness or unreasonableness of the rate to be applied.

1. 28 U.S.C.A. § 1346(a) (2).

2. Because of the larger amount of the Government's counterclaims, $16,942.03, not now in issue, judgment was entered in favor of the United States in the amount of $2,527.21.

■ Under Tariff M.F.-3, Rule 4(i), quoted supra, the fact that the through rate is higher than the aggregate of the intermediate rates does not prevent it from being the applicable rate of the carrier. The Commission has often ruled, however, that through rates are prima facie unjust and unreasonable to the extent that they exceed the combination of local rates from and to the same points.[3]

Section 216(c) of the Interstate Commerce Act, 49 U.S.C.A. § 316(c), provides that: "Common carriers of property by motor vehicles may establish reasonable through routes and joint rates, charges, and classifications" with other carriers. Section 216(d), 49 U.S.C.A. § 316(d), provides that: all charges of motor carriers for services covered by the Act "shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof, is prohibited and declared to be unlawful." Section 204(c), 49 U.S.C.A. § 304(c), provides that: upon complaint or upon its own initiative the Commission may investigate whether any motor carrier has failed to comply with any provision of the chapter or with any requirement established pursuant thereto, and issue an appropriate order to compel compliance.

Sections 13 et seq. of the Act, 49 U.S. C.A. § 13 et seq., dealing with railroads, gives the Commission authority to award reparations, subject to a two-year limitation period, Section 16(3), 49 U.S.C.A. § 16(3); but part II of the Act covering motor carriers contains no similar provision. Nevertheless, the Commission has consistently held that the general powers conferred upon it in the sections already mentioned and in other sections furnish authority to determine the reasonableness of a past rate, the lawfulness of which is brought into issue in a judicial proceeding.

Holdings to that effect had been made in a long line of decisions by divisions of the Commission.[4] In Bell Potato Chip Co. v. Aberdeen Truck Line, 43 M.C.C. 337, the full Commission undertook a "thorough re-examination" of its authority to "make an administrative determination of the lawfulness of rates charged on past shipments," and concluded that the earlier decisions of its divisions were correct. The opinion in the Bell Potato Chip Co. case, supra, was reconsidered at length and approved by the Commission in the very recent case of United States v. Davidson Transfer & Storage Co., Inc., No. M-C-1849, decided October 14, 1957.

■ This construction of the Act by the body charged with primary responsibility for its administration is, of course, entitled to great weight by the courts.[5] Following such construction, the Court of Claims and another district court have

---

3. See Kingan & Co. v. Olson Transportation Co., 32 M.C.C. 10; Stokely Foods, Inc. v. Foster Freight Line, Inc., 62 M.C.C. 179; United States v. Davidson Transfer & Storage Co., Inc., No. MC-C-1849, decided October 14, 1957.

4. See W. A. Barrows Porcelain Enamel Co. v. Cushman M. Delivery, 11 M.C.C. 365, 367; Hausman Steel Co. v. Seaboard Freight Lines, Inc., 32 M.C.C. 31; Dixie Mercerizing Co. v. ET and WNC Motor Transp. Co., 21 M.C.C. 491, affirmed on reconsideration, 41 M.C.C. 355; Koppers Co. v. Langer Transport Corp., 12 M.C.C. 741; Hill-Clarke Machinery Co. v. Webber Cartage Lines, Inc., 26 M.C.C. 144; Patten Blinn Lbr. Co. v. Southern Arizona Freight Lines, 31 M. C.C. 716.

5. See United States v. Bergh, 1956, 352 U.S. 40, 47, 77 S.Ct. 106, 1 L.Ed.2d 102; Adams v. United States, 1943, 319 U.S. 312, 314–315, 63 S.Ct. 1122, 87 L.Ed. 1421; United States v. Citizens Loan & Trust Co., 1942, 316 U.S. 209, 214, 62 S.Ct. 1026, 86 L.Ed. 1387; Inland Waterways Corp. v. Young, 1940, 309 U.S. 517, 60 S.Ct. 646, 84 L.Ed. 901; United States v. American Trucking Associations, Inc., 1940, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; United States v. Madigan, 1937, 300 U.S. 500, 506, 57 S. Ct. 566, 81 L.Ed. 767; Norwegian Nitrogen Products Co. v. United States, 1933, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796; United States v. Jackson, 1930, 280 U.S. 183, 193, 50 S.Ct. 143, 74 L.Ed. 361; Edwards' Lessee v. Darby, 1827, 12 Wheat. 207, 210, 25 U.S. 207, 210, 6 L.Ed. 603.

looked to the Commission for aid in the disposition of suits involving past motor carrier rates alleged to be unreasonable.[6]

The district court in the present case thought that the case of Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912, precluded it from holding the entry of judgment in abeyance pending proceedings before the Interstate Commerce Commission. That was a five-to-four decision in which the majority held that the complaint stated no federally cognizable cause of action to which the referred issue was subsidiary. After full discussion, that case was distinguished in the report of the Commission in United States v. Davidson Transfer & Storage Co., Inc., supra, with the conclusion that:

"  *  *  * However, we do not interpret the Montana-Dakota case as holding that where a cause of action to which the issue of reasonableness is subsidiary is maintainable in the court in which it is brought, reasonableness issue may not be determined by the proper administrative body."

In United States v. Western Pacific R. Co., 1956, 352 U.S. 59, 72, 77 S.Ct. 161, 1 L.Ed.2d 126, it was argued that, because Section 16(3) of the Act prevented the Commission from considering complaints for overcharges against railroad carriers not filed within two years from the time the cause of action accrued, that the Commission was barred absolutely from hearing questions as to the reasonableness of rates arising in suits brought after two years, whether such questions came to the Commission by way of referral or an original suit. The Supreme Court held:

"  *  *  * that the limitation of § 16(3) does not bar a reference to the Interstate Commerce Commission of questions raised by way of

defense and within the Commission's primary jurisdiction, as were these questions relating to the applicable tariff." United States v. Western Pacific R. Co., supra, 352 U.S. at page 74, 77 S.Ct. at page 170.

The case of United States v. Chesapeake & Ohio Ry. Co., 1956, 352 U.S. 77, 81, 77 S.Ct. 172, 1 L.Ed.2d 140, decided on the same day, is to the same effect. From those decisions, it would seem to follow that the Commission's lack of power to award reparations does not negative its authority to determine the reasonableness of a filed rate, when that issue is incident to a federally cognizable cause of action pending in court.

Congress undertook, in terms, to save existing common law and statutory rights and remedies. Section 216 of the Act, 49 U.S.C.A. § 316, relating to the duty to establish reasonable rates, concludes with a provision that: "Nothing in this section shall be held to extinguish any remedy or right of action not inconsistent herewith." Very clearly, the district court could not itself undertake an independent investigation into the reasonableness of the rate. Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553. The court, then, had the alternative either of denying the shipper any remedy against a filed rate, which on its face was prima facie unreasonable and unlawful, or of holding its judgment in abeyance to permit a determination of the reasonableness of the rate by the Interstate Commerce Commission. In our opinion, the second alternative is more consistent with justice, with the terms of the Interstate Commerce Act, and with the cases. The judgment of the district court is, therefore, reversed and the cause remanded with directions to grant the motion to hold the judgment in abeyance to enable the Government to obtain a determination from the Interstate Commerce Commission with respect to the reason-

6. New York & New Brunswick Auto Express Co. v. United States, 1954, 126 F. Supp. 215, 130 Ct.Cl. 339; United States v. Garner, D.C.E.D.N.C.1955, 134 F. Supp. 16.

ableness of the through rate as applied to the transportation services here involved.

Reversed and remanded with directions.