UNITED STATES of America,
Appellant,

v.

DAVIDSON TRANSFER & STORAGE
COMPANY, Inc., Appellee.

No. 14123.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 8, 1958.

Decided April 24, 1958.

Certiorari Granted Oct. 13, 1958.
See 79 S.Ct. 27.

Mr. Alan S. Rosenthal, Atty., Dept. of Justice, with whom Asst. Atty. Gen. George C. Doub, Mr. Oliver Gasch, U. S. Atty., Mr. Paul A. Sweeney, Atty., Dept. of Justice, and Mr. Melvin Richter, Atty., Dept. of Justice, at the time the brief was filed, were on the brief, for appellant. Mr. Lewis Carroll, Asst. U. S. Atty., also entered an appearance for appellant.

Mr. Bryce Rea, Jr., Washington, D. C., for appellee. Mr. Donald E. Cross, Washington, D. C., also entered an appearance for appellee.

Before PRETTYMAN, BAZELON and BASTIAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a civil action brought in the District Court against the United States under the Tucker Act[1] on a contract. The plaintiff was Davidson Transfer & Storage Company, Inc., appellee here, a motor carrier. The contract was for the carriage of goods from Poughkeepsie, New York, to Bellbluff, Virginia. The District Court, on cross motions for summary judgment, rendered judgment for Davidson.

The State of New York had levied a ton-mile truck tax for the privilege of operating motor vehicles on its highways. Davidson filed with the Interstate Commerce Commission, as a tariff, a surcharge which purported to cover this tax. On the bills of lading here involved the Government paid the full tariff rate, including the surcharge. Later, upon a threat of offset pursuant to audit by the General Accounting Office, Davidson repaid to the Government the amount of the surcharge. Davidson then filed its suit to recover.

Davidson filed its tariff with the Interstate Commerce Commission on October 8, 1951. The Commission suspended the effective date for seven months, the maximum period allowed by the statute.[2] By the end of that period the Commission had not completed its inquiry, and the filed tariff went into effect on May 8, 1952. Thereafter, on July 20, 1953, the Commission issued its findings and order, concluding that the New York tax should be treated as a normal operating expense, to be reflected in the carriers' rates rather than in surcharges, and further concluded that the surcharges were unjust and unreasonable. The Commission ordered the surcharges cancelled, and they were cancelled on October 15, 1953. The transportation for which the amounts here in dispute were paid occurred during the period when the surcharges were in effect, that is, between May 8, 1952, and October 15, 1953.

The contentions of the parties, summarized, are:

*United States.*

While the Interstate Commerce commission cannot award reparations in motor-carrier cases, it has

1. 28 U.S.C. § 1346(a) (2).

2. Sec. 216(g), Interstate Commerce Act, 49 Stat. 559 (1935), 52 Stat. 1240 (1938), 54 Stat. 924 (1940), 49 U.S.C.A. § 316(g).

the power and duty to determine the reasonableness of a past motor-carrier rate which is at issue in a judicial proceeding. The Commission has consistently so held in a line of cases culminating in Bell Potato Chip Co. v. Aberdeen Truck Line,[3] recently reaffirmed in another case involving our present appellee.[4] The reasoning in those cases is that the Commission has broad power to enforce compliance with the statute; that Congress has forbidden unjust and unreasonable rates; that to allow recovery of an unlawful charge would be inconsistent with the statutory preservation of shippers' common-law remedies; and that, unless the Commission's assistance were sought on the issue of the reasonableness of a rate in a judicial proceeding, the purpose of the primary jurisdiction rule would be totally frustrated. Other courts, notably the Court of Claims,[5] have looked to the Commission for aid in the disposition of suits involving the reasonableness *vel non* of past motor-carrier rates. The Supreme Court, in two recent cases,[6] has dispelled all doubt as to the Commission's jurisdiction to find a past motor-carrier rate unreasonable, and its lack of jurisdiction to award reparations does not affect the necessity of deferring to the Commission's view on questions raised in a judicial proceeding by way of defense and within the Commission's primary jurisdiction. Montana-Dakota[7] is not to the contrary.

*Davidson.*

As long as the surcharge was in effect the United States was bound to pay it and the carrier was bound to collect it. The failure of the Commission to make its suspension order effective immediately shows the findings were directed solely to the future. The findings show the Commission was not concerned with unreasonableness but with correcting for the future an undesirable rate structure. When the Commission intends to make findings as to past unreasonableness, it does so on specific terms. If reparations could not be had directly by suit, they cannot be had indirectly by withholding payment. The power of the General Accounting Office to offset payments to carriers does not give the United States greater rights than private shippers have. Nor does the fact that the carrier and not the shipper brought this suit make any difference. The question is whether the United States has a justiciable legal right to any rate other than the filed rate. It is immaterial whether the United States is plaintiff or defendant. The case is therefore distinguished from Western Pacific.[8] The District Court soundly reasoned that to permit the United States to refuse to pay the filed and effective surcharge would be to convert the power of the Commission to suspend for seven months into the power to suspend completely. If Congress had so intended it would have said so. It so provided in respect to rail carriers in Part I of the Interstate Commerce Act; its failure so to provide in respect to motor carriers was clearly deliberate. The rate-making power of the Commission over motor carriers is prospective

---

3. 43 M.C.C. 337 (1944).

4. United States v. Davidson Transfer & Storage Co., No. MCC–1849 (Oct. 14, 1957).

5. New York & New Brunswick Auto Exp. Co. v. United States, 126 F.Supp. 215, 130 Ct.Cl. 339 (1954).

6. United States v. Western Pac. R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d

126 (1956); United States v. Chesapeake & Ohio Ry. Co., 352 U.S. 77, 77 S.Ct. 172, 1 L.Ed.2d 140 (1956).

7. Montana-Dakota Utilities Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951).

8. United States v. Western Pac. R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

only. One result of this restriction is that a shipper may be deprived of his right to reasonable rates for a limited time while rates are under investigation. Another result is that a carrier may suffer a similar deprivation. Both results are examples of "regulatory lag", an inevitable consequence of the statutory scheme. Rate reasonableness is not a justiciable legal right but rather a criterion for administrative application. The only legal rate is the filed rate. The Supreme Court so held in Montana-Dakota, supra. The reason the buyer's complaint in that case failed to state a federally cognizable cause of action was that charging an unreasonable filed and effective rate did not constitute a violation of a justiciable legal right. It makes no difference whether the right is alleged by complaint for reparations or as defense to a suit for charges. In Western Pacific, supra, the Court merely held that the Court of Claims must refer the question of reasonableness to the Commission because of the facts in the case and the ambiguity of the tariff. The Interstate Commerce Act gives shippers a legal right to reparations in rail charges but does not do so in motor-carrier charges. In the motor-carrier cases upon which the United States relies, this issue was not raised. Whatever common-law right a shipper may have had to recover for unreasonable rates was superseded by Part II of the Interstate Commerce Act. Such a common-law right would be inconsistent with the statute.

The basic issue is whether, after the passage of the Interstate Commerce Act,

a shipper by motor carrier has a right to a reasonable rate, cognizable in court as a defense to a claim for the amount of a filed and effective rate. We think the United States must prevail on this issue.

At common law a shipper had a right to a reasonable rate. The Interstate Commerce Act preserved that concept in respect to both railroads and motor carriers, declaring it to be the duty of every common carrier to establish just and reasonable rates[9] and declaring every unjust and unreasonable rate to be unlawful.[10] The statutory scheme of procedure and power in respect to rail carriers is in Part I of the Act,[11] principally in Sections 15 and 16;[12] and in respect to motor carriers it is in Part II,[13] principally Section 216.[14] Both Part I and Part II provide that when a complainant alleges that a rate being charged is unreasonable the Commission shall determine the lawful rate to be thereafter observed. Part I, relating to rail carriers, proceeds further and provides that the Commission may award damages in such a case and direct the carrier to pay them.[15] Such an order is enforceable in a civil action by a federal district court. But Part II of the Act, relating to motor carriers, contains no provisions similar to these latter provisions of Part I. No authority is conferred on the Commission to award damages in respect to motor-carrier rates.

A similar situation exists in respect to proposed new rates. In both rail and motor-carrier cases the Commission may suspend a proposed new tariff for a limited time and determine the reasonable rate. If the tariff has gone into effect due to the expiration of the suspension, the Commission may, in the case of a rail carrier, order a refund to the ship-

9. 41 Stat. 475 (1920), 49 U.S.C.A. § 1(5); 49 Stat. 558 (1935), 49 U.S.C.A. § 316(a) and (b).

10. 41 Stat. 475 (1920), 49 U.S.C.A. § 1 (5); 49 Stat. 558 (1935), as amended 54 Stat. 924 (1940), 49 U.S.C.A. § 316(d).

11. 24 Stat. 379 (1887), as amended, 49 U.S.C.A. § 1 et seq.

12. Id., 49 U.S.C.A. §§ 15, 16.

13. 49 Stat. 543 (1935), as amended, 49 U.S.C.A. § 301 et seq.

14. Id., 49 U.S.C.A. § 316.

15. 34 Stat. 590 (1906), as amended, 49 U.S.C.A. § 16(1).

per of the charged and collected excess over the reasonable rate.[16] But no provision as to refunds appears in Part II of the Act, relating to motor carriers.

■ A filed rate determined by the Commission to be reasonable is not only the legal rate but also the lawful rate. This was thoroughly explained in the Arizona Grocery case.[17] While that case dealt with rail carriers its doctrines seem clearly applicable to motor carriers. The Court held that the Commission cannot disavow its legislative rate-making action and award reparations upon a different finding of reasonableness. If, on the other hand, the rate is carrier-made, not determined by the Commission to be reasonable, a shipper may complain and the statutory provisions we have described take effect.

■ The surcharge now before us, imposed by a motor carrier, had been filed and was effective but was not a Commission-approved rate. We think a shipper by motor carrier was not deprived of his right to a reasonable rate because of the failure of Congress to give the Commission the adjudicatory function, a quasi-judicial power, of awarding reparations. He was merely left to his old remedy, i.e., a civil action in court.

■ Absent a statute creating a special forum, a shipper's common-law rights were enforceable in court upon a complaint seeking reparations for unreasonable charges collected by a carrier.[18] The motor-carrier Part of the Interstate Commerce Act specifically provides that all remedies not inconsistent with its provisions regarding rates survive its passage.[19] Failure to provide in a new statute a new remedy is not inconsistent with the retention of an existing common-law remedy. Since the Act did not extinguish the right to reasonable rates for past services but merely failed to provide an administrative forum for adjudication of the damages, the right itself survived and the old remedy survived.

■ The remainder of the answer to the pending controversy falls rapidly into place. Davidson had a right to sue for its filed charges; the United States, a shipper, had a right to defend upon the ground that the claimed rate was unreasonable. At that point the doctrine of primary jurisdiction comes into play, and the Western Pacific case, supra, requires that the court refer the issue of reasonableness to the Commission. We need not here analyze that case.

We think the Commission's findings in respect to the proposed tariff were not sufficiently clear to serve as the basis for judicial judgment upon the complaint. It is not clear whether the Commission meant to find the surcharge an unreasonable rate during the then-past period when it was in effect.

16. 36 Stat. 552 (1910), as amended, 49 U.S.C.A. § 15(7).

17. Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Ry., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348 (1932).

18. Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Ry., supra; Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 436, 27 S.Ct. 350, 51 L. Ed. 553 (1907); Lewis-Simas-Jones Co. v. Southern Pac. Co., 283 U.S. 654, 660, 51 S.Ct. 592, 75 L.Ed. 1333 (1931); Interstate Commerce Commission v. Cincinnati, New Orleans & T. P. Ry., 167 U.S. 479, 505–506, 17 S.Ct. 896, 42 L. Ed. 243 (1897); Interstate Commerce Commission v. Baltimore & Ohio R. Co., 145 U.S. 263, 12 S.Ct. 844, 36 L.Ed. 699 (1892); Dow v. Beidelman, 125 U.S. 680, 687, 8 S.Ct. 1028, 31 L.Ed. 841 (1888); Western Union Tel. Co. v. Call Pub. Co., 181 U.S. 92, 102, 21 S.Ct. 561, 45 L. Ed. 765 (1901); Mitchell Coal & Coke Co. v. Pennsylvania R. Co., 230 U.S. 247, 264, 33 S.Ct. 916, 57 L.Ed. 1472 (1912); Tift v. Southern Ry. Co., 138 F. 753, 759 (C.C.W.D.Ga.1905), affirmed 206 U.S. 428, 27 S.Ct. 709, 51 L.Ed. 1124 (1907); Smith v. Chicago & N. W. Ry., 49 Wis. 443, 5 N.W. 240 (1880); West Virginia Transportation Co. v. Sweetzer, 25 W.Va. 434, 444 et seq. (1885); Beale & Wyman, Railroad Rate Regulation 12–15 (1906); II Sharfman, Interstate Commerce Commission 393–406 (1931).

19. 49 Stat. 560 (1935), 49 U.S.C.A. § 316 (j).

We find ourselves in accord with the opinion of the Fifth Circuit in United States v. T.I.M.E., Incorporated.[20]

Montana-Dakota, supra, is not to the contrary. That was a lawsuit between two private utility companies, one claiming that the other had charged it unreasonable rates for electric energy. The plaintiff sued for the excess above a reasonable rate. The problem was whether it stated a federally cognizable cause of action. There was no diversity of citizenship, so a federal court could not entertain the suit absent some special federal statute. The plaintiff presented an ingenious theory. It said that a fraud, due to an interlocking directorate of supplier and suppliee, prevented it from appealing to the Federal Power Commission to fix a reasonable rate, and that therefore its suit was one to enforce the Power Act, which Act entitled it to reasonable rates. But the Supreme Court pointed out that alleged fraud adds nothing to federal jurisdiction. The plaintiff urged that the Commission had no power to grant reparations; but again it was clear that this lack created no federally cognizable cause of action. The difficulty was not lack of a cause of action but lack of a cause cognizable in a federal court.

Sentences from the opinion are urged upon us by Davidson to support its position, but we think the Court was discussing the case before it and not broad general principles inapplicable to its pending problem. That it was thus minded is apparent enough if its discussion is read carefully and in full context. In the case before us on this appeal there is a federally cognizable cause of action, an alleged breach of contract by the United States, and so this controversy falls outside the Montana-Dakota ruling.

The cause will be remanded to the District Court with instructions to refer to the Interstate Commerce Commission the question of the reasonableness of the filed tariff surcharge as a rate during the period when it was filed and effective.

Upon receipt of that finding the District Court will proceed to the adjudication of the action before it.

Reversed and remanded.

BAZELON, Circuit Judge, heard oral argument but did not participate in consideration or decision of this case.