Willie **THOMPSON**, Plaintiff,

v.

Donna **SHALALA**, Secretary of Health and Human Services, Defendant.

No. 93 Civ. 5776 (VLB).

United States District Court, S.D. New York.

Dec. 1, 1994.

Carol S. Goldstein, Monroe, NY, for plaintiff.

Sapna V. Raj, Asst. U.S. Atty., New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This is an action under the Social Security Act, 42 U.S.C. § 405(g), challenging a final determination of the Secretary of Health and Human Services (the "Secretary") denying plaintiff Social Security disability benefits. This court has jurisdiction under 28 U.S.C. § 1331.

Both parties have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

For the reasons stated below I grant the Secretary's motion and affirm the final determination that plaintiff was not disabled during the period he was eligible for disability benefits. Plaintiff's motion is denied. The Clerk is directed to close this case.

### II

The relevant facts are undisputed. Plaintiff's last period of gainful employment was from November 1972 to May 1979 when he worked as a security aide in a psychiatric center. This job was physically demanding requiring him to walk a great deal and to physically restrain patients who became violent.

In December 1976 plaintiff injured his left knee while trying to restrain a patient. In addition to this injury, while working at an annex for boys in 1972, plaintiff had injured and had surgery on his right knee.

Plaintiff first filed an application for disability insurance benefits on July 24, 1979 asserting that by May 31, 1979 he was unable to walk or stand for any period of time due to knee injuries and was therefore entitled to disability benefits. On September 13, 1979 the Secretary determined that plaintiff was not disabled because although unable to return to his past work as a security aide due to its physical demands, he was able to work a sedentary position which required only sitting and light lifting.[1]

---

1. To be "disabled" within the meaning of the Social Security Law, the applicant must be unable to perform any substantial gainful work due to a medical condition. The condition must be severe enough to prevent the applicant from working not only in his or her usual occupation but in any other substantial gainful work considering age, education, training and work experience. 42 U.S.C. § 423(d)(2)(A).

On March 18, 1992 plaintiff filed a second application for disability benefits under Title II again asserting his knee condition had caused him to be disabled since May 31, 1979. Due to the extensive period of time since plaintiff last worked, to have been entitled to disability benefits under the current application the plaintiff had to provide the Secretary with sufficient medical evidence that his disability existed on or before December 31, 1985, the date his insured status expired, and lasted for 12 continuous months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.110, 404.130.

The Secretary denied the plaintiff's 1992 application for disability on the same grounds the 1979 application was denied, that plaintiff was able to perform sedentary work on or before December 31, 1985 and was therefore not "disabled" within the definition of the Social Security Law.

The Secretary based the "not disabled" determination on the medical reports of D. Jeyamitra (report dated May 10, 1992), M. Kamalian (report dated July 1, 1992), Arden Hill Hospital (reports covering period from March 22, 1978 to April 7, 1990), and R. Stoller (reports dated September 26, 1978 and May 1, 1979).

That part of Dr. Jeyamitra's report relating to the plaintiff's condition between 1979 and 1985 stated that plaintiff had surgery on his knees in 1972 and 1979. Dr. Kamalian, the plaintiff's treating physician, stated that plaintiff cannot presently "engage in fruitful activities" due to a limited range of motion of both knees. Dr. Kamalian, however, gives no information as to the plaintiff's medical condition between 1979 and 1985 and, more importantly, whether he would have been able to perform sedentary work during that period.[2]

The various reports from Arden Hill Hospital detail knee surgeries performed on the plaintiff, but none of these reports state that he should refrain from sedentary employment upon discharge. Dr. Stoller's September 1976 report expresses doubt that plaintiff would be able to continue his physically demanding job as a security aid but also states "retraining for something lighter could be entertained." The May 1979 report asserts that plaintiff is eligible for total disability retirement from the State of New York because the difficulty in standing or walking for longer than 1 hour made it impossible for him to perform his job duties as a security aide. It gives no information or guidance as to the plaintiff's ability to perform sedentary work at that time.

### III

■ Under 42 U.S.C. § 405(g), the decision of the Secretary is to be upheld if based upon substantial evidence. When testifying before the administrative law judge in March 1993, plaintiff stated the pain in his knees made it difficult for him to sit for any length of time either now or between 1979 and 1985. Current inability to perform sedentary work may be some indication that he was also unable to perform sedentary work during the relevant period and that the denial of the 1979 claim was not based upon substantial evidence. *Phoenix Canada Oil v. Texaco*, 842 F.2d 1466, 1478 (3d Cir.1988); see also *Eatz v. DME Unit of Local Union No 3*, 794 F.2d 29 (2d Cir.1986).

Under some circumstances, the plaintiff's testimony combined with his current inability to perform sedentary work might be sufficient evidence of the plaintiff's disability to permit the court to find the Secretary's determination was not based on substantial evidence. Plaintiff here, however, stated at the hearing before the administrative law judge that "there was jobs ... that I could have did."[3] Plaintiff admitted his ability to work and offered no proof of any unsuccessful

---

2. For the plaintiff's first disability application in 1979, Dr. Kamalian stated in a letter that "Mr. Thompson should be rehabilitated for a less strenuous physical activity, such as that of a sedentary type of occupation requiring no excessive walking or bending." This letter dated August 20, 1979, was not used by the Secretary as a basis for denying the 1992 application.

3. The applicant's treating physician, Dr. Kamalian, has no record nor recollection of the severity of plaintiff's condition during the relevant time frame.

attempt to obtain sedentary work. Instead, the plaintiff stated that he "was retired by the state."

The administrative law judge, who found plaintiff's testimony not credible, albeit without discussion, is the only officer who has heard plaintiff's testimony live, and is accordingly able to evaluate it based on demeanor evidence as well as plausibility. See *United States v. Zafiro*, 945 F.2d 881 (7th Cir.1991), *aff'd* —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *United States v. Brach*, 809 F.Supp. 1128 (S.D.N.Y.1993).

Although such evaluation may be less conclusive than if made by an entirely independent officer,[4] such evaluation must be given significant weight in combination with plaintiff's failure to provide further evidence connection with benefits sought under a governmental program which only exists to the extent provided by Congress. *Wagner v. Secretary*, 906 F.2d 856, 860 (2d Cir.1990).

■ In creating such programs Congress may, within broad limits, establish procedures for its administration which must be respected by the courts. See generally *Bartlett v. Bowen*, 816 F.2d 695 (D.C.Cir.), *reinstated en banc* 824 F.2d 1240 (D.C.Cir.1987); *Maroszan v. United States*, 852 F.2d 1469, 1477–79 (7th Cir.1988) (en banc); Sullivan, "Unconstitutional Conditions," 102 Harv. L.Rev. 1413 (May 1989); Jones, "The Rule of Law and the Welfare State," 58 Colum.L.Rev. 143 (1958).

■ The administrative law judge relied on various medical reports unfavorable to plaintiff's disability claim as constituting substantial evidence. However, these reports would have been insufficient to constitute "substantial evidence" if plaintiff had not admitted to his ability to work, or if the treating physician prepared a report favorable to plaintiff. *Schisler v. Heckler*, 787 F.2d 76 (2d

Cir.1986); *Vargas v. Sullivan*, 898 F.2d 293, 294 (2d Cir.1990).

Though no basis alone is sufficient, the combination of the Secretary's evidence contrary to plaintiff's claim, the administrative law judge's evaluation of plaintiff's testimony, and perhaps most significantly the plaintiff's admission of his ability to work, is sufficient to support the agency's denial of plaintiff's claim.[5]

## IV

■ It might be argued that since the above analysis diverges somewhat from that articulated by the agency, the matter should be remanded for reconsideration pursuant to *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), which denied courts the authority, at least in most circumstances, to affirm agency action on grounds not articulated by the agency. See *Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir.1990). Existence of primary authority or primary jurisdiction of an agency does not, however, require remand if the outcome is sufficiently clear. *United States v. Chesapeake & Ohio Ry.*, 352 U.S. 77, 77 S.Ct. 172, 1 L.Ed.2d 140 (1956); *Skinner & Eddy Corp. v. United States*, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919); *River Plate & Brazil Conferences v. Pressed Steel Car Co.*, 227 F.2d 60, 63 (2d Cir.1955); *International Travel Arrangers v. Western Airlines*, 623 F.2d 1255 (8th Cir. 1980); Note, 58 Colum.L.Rev. 673 (1958).

In 1993 Fed.R.Civ.P. 1, calling on courts to seek the "just, speedy and inexpensive" determination of every action, was amended to provide that all procedural rules should be "administered" as well as "construed" to that end. Remanding for clarification of the administrative decision where the outcome is foregone would add to expense and delay with no benefit to the administration of justice, and thus run counter to this authorita-

---

**4.** See *FTC v. Elders Grain*, 868 F.2d 901, 905 (7th Cir.1986) (Posner, J.); *Heldman v. Sobol*, 846 F.Supp. 285 (S.D.N.Y.1994); Committee on Trade Regulation, "Federal Trade Commission Procedure for Issuance of Complaints," 30 Rec Ass'n Bar City NY 213 (1975).

**5.** The 13 year delay in filing the second application along with the loss of medical evidence

caused by the delay also subjects the plaintiff here to the equitable doctrine of laches. See generally *Robins Island v. Southold Development*, 959 F.2d 409, 421–25 (2d Cir.) *cert. denied*, —— U.S. ——, 113 S.Ct. 603, 121 L.Ed.2d 539 (1992); *Bourne Co. v. Tower Records*, 976 F.2d 99 (2d Cir.1992); *Lake Caryonah v. Pulte Home*, 903 F.2d 505 (7th Cir.1990).

tive and recent pronouncement. See *In re Pan Am,* 16 F.3d 513 (2d Cir.1994); *In re River Foal,* 161 B.R. 568 (S.D.N.Y.1993); see generally Judicial Improvements Act of 1990, Public Law 101–650, 104 Stat. 5089, enacting 28 U.S.C. § 473.

**SO ORDERED.**