254 F.2d 510
 NEW YORK, SUSQUEHANNA & WESTERN RAILROAD COMPANY, Petitioner,
v.
Hon. Frederick V. FOLLMER, United States District Judge for
the Middle District of Pennsylvania (Reading
Company, Intervenor).
 No. 12398.
 United States Court of Appeals Third Circuit.
 Argued Feb. 5, 1958.
Decided April 24, 1958.
 
 Leon Leighton, New York City, for petitioner.
 Arthur Littleton and Alfred W. Hesse, Jr., Philadelphia, Pa. (J. Wesley Oler and William I. Woodcock, Jr., Philadelphia, Pa., on the brief), for respondent and intervenor.
 Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 This is a petition for a writ of mandamus to be directed to the Honorable Frederick V. Follmer, United States District Judge for the Middle District of Pennsylvania. It arises out of an action brought by the New York, Susquehanna and Western Railroad against the Reading Company. In that suit federal jurisdiction is alleged by virtue of diversity of citizenship. The dispute between the parties has to do with the division of receipts from joint through rates established by agreements between Susquehanna and Reading to which certain other railroads, not important here, were also parties. The plaintiff sought a declaration of its rights to these receipts. The case was heard by the district judge. Oral arguments were made, briefs were filed. His order was 'that the issues in this proceeding be referred by the parties to the Interstate Commerce Commission of the United States of America for determination by the Commission of such issues and that a certified copy of the report of the Commission be filed with the Court.' Thereupon the plaintiff, Susquehanna, petitioned this Court for the mandamus writ.
 
 
 2
 Petitioner frankly admits that there is in this case no basis for charging the district judge with 'arbitrary action, usurpation of power or obvious disregard of the law.' See American Airlines v. Forman, 3 Cir., 1953,204 F.2d 230, 233. But, it says, the district court should be directed to decided the case which it has already heard and over which it has jurisdiction. That we have power to issue a writ of mandamus on this ground if the case calls for it is settled by the Supreme Court's decision in LaBuy v. Howes Leather Co., 1957, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290. That case also emphasizes strongly the point of view that references to masterships, although provided for by the federal rules, should be very sparingly used by district judges. See Fed.Rules Civ.Proc. rule 53(b), 28 U.S.C. See also United States v. Kirkpatrick, 3 Cir., 1951, 186 F.2d 393. We believe that the same attitude should be taken toward referrals to administrative agencies.
 
 
 3
 But it is a practice for which there is authority in instances where, at least, the agency has some competence to resolve the issues involved.[1] See United States v. Western Pac. R.R., 1956, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126; United States v. Chesapeake & O.R.R., 1956, 352 U.S. 77, 77 S.Ct. 172, 1 L.Ed.2d 140; General American Tank Car Corp. v. El Dorado Terminal Co., 1940, 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361. However, not every litigation of this nature includes subject matter of the sort which makes reference to administrative expertise a necessary or desirable procedure. See Great Northern Ry. Co. v. Merchants Elevator Co., 1922, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943. Our problem here is to determine whether, in the light of the LaBuy opinion, the judge was badly ill-advised in exercising this authority be referring the issues involved in this case to another body for advice.[2]
 
 
 4
 The division agreement in controversy was dated September 15, 1947. It lists two stations for Susquehanna:
 
 
 5
 (a) Station 2265, Edgewater, N.J., Percentage Group BB;
 
 
 6
 (b) Station 2266, Edgewater Docks (New York Harbor Lighterage Points), N.J., Percentage Group 18.
 
 
 7
 The percentage group last referred to (Group 18) provides as follows:
 
 
 8
 'Per cents to or from Edgewater Docks apply via Green Pond Jct. only. Deduct before prorating 4.4cents per 100 pounds * * * for (Susquehanna) and divide the balance on Group BB percents.'
 
 
 9
 All the traffic receipts with which we are concerned here moved via Green Pond Junction. The dispute between the parties is restricted to what is known as Seatrain traffic. Seatrain has been in this Court earlier. It is a common carrier by water which delivers loaded freight cars to railroads and receivesloaded freight cars from them. See Seatrain Lines, Inc. v. Pennsylvania R.R. Co., 3 Cir., 1953, 207 F.2d 255. According to Susquehanna it has two things to prove. One, does the Seatrain traffic move to or from Susquehanna's Edgewater Docks station at which the deduction already quoted applies? Susquehanna, of course, says yes to this and relies on a report of the Interstate Commerce Commission in Borough of Edgewater, N.J., 280 I.C.C. 121 (1951), as res judicata. This, of course, is its burden. Determination of what constitutes collateral estoppel in a former proceeding between parties now litigants is everyday business for a court. It presents no problem requiring any experts on railroad matters.
 
 
 10
 A second issue which Susquehanna admits it must prove is whether it is entitled to the deduction despite the fact that it renders no lighterage service on the Seatrain traffic. Reading says it is not so entitled under the terms of the division sheet; that it is asking for payment for services it does not render. Further, says Reading, Susquehanna knows it is not entitled to such compensation because it made no claim for it between March 1947 and December 1951.
 
 
 11
 This second issue seems to us to be a question of construing the contract the parties have made, deciding whether there has been a breach and whether any rights have been waived or otherwise lost. The terms used seem to us to provide no more technical difficulties than a contract growing out of business in the textile industry or the purchase and sale of products from a steel fabricating plant. Their interpretation is not intermixed with the peculiarly administrative function of determining the reasonability of rates charged. Cf. United States v. Western Pac. R.R., supra; United States v. Chesapeake & O.R.R., supra.
 
 
 12
 Susquehanna points out that there are adequate judicial precedents for courts deciding such matters on their own responsibility without reference elsewhere. Thompson v. St. Louis-S.F. Ry., 8 Cir., 1954, 218 F.2d 166, certiorari denied, 1955, 348 U.S. 964, 75 S.Ct. 525, 99 L.Ed. 752. See also Morgenthau v. Sugar Land Ry., 5 Cir., 1936, 83 F.2d 72; St. Louis Southwestern R. Co. v. S. H. Bolinger & Co., 5 Cir., 1927, 17 F.2d 924. Susquehanna grants that a three-judge case in the Southern District of New York is directly opposite to its point of view. Ewen v. Peoria & E.R. Co., D.C.S.D.N.Y.1948, 78 F.Supp. 312, certiorari denied Income Bondholders of Peoria & Eastern R. Co. v. New York Central R. Co., 1949, 336 U.S. 919, 69 S.Ct. 642, 93 L.Ed. 1082. The opinion has additional prestige because it is written by Judge Learned Hand. The case did present, however, what we think are more complicated issues than this one and the opinion goes to great lengths to demonstrate that they were not within judicial competence as are those here. Further, it was decided before LaBuy decision, cited above.
 
 
 13
 Susquehanna urges that reference to the Interstate Commerce Commission, an already overburdened tribunal, would necessarily be slow and expensive and might lead to something much more highly complicated than this litigation in the district court. Furthermore, plaintiff complains, reference forces upon it the heavy burden of proof required in the administrative proceedings which are desired, not by Susquehanna, but Reading. These are makeweight arguments, in our opinion. If reference was proper, the fact that one of the parties finds the result unfavorable would not matter. That is usual in any litigation.
 
 
 14
 We think the compelling reason for granting petitioner's prayer is that this case, properly tried to the district court, was submitted to that court for adjudication and presents problems which are well within the ordinary province of a judge to solve. That he is under obligation to solve them we think is pretty clearly indicated by the LaBuy decision already cited.
 
 
 15
 As in a previous case in this Circuit, Paramount Pictures, Inc. v. Rodney, 1950, 186 F.2d 111, certiorari denied, 1951, 340 U.S. 953, 71 S.Ct. 572, 95 L.Ed. 687, we assume it will not be necessary to issue the writ unless application for certiorari be made. We assume the district judge will vacate the order of reference and proceed to decide the case allready submitted to him.
 
 
 
 [1]
 Susquehanna argues that the district court's authority to refer a case to the Interstate Commerce Commission is not as broad as that set out above. It cites the opinion of Mr. Justice Jackson in Montana-Dakota Utilities Co. v. Northwestern Pub. Serv. Co., 1951, 341 U.S. 246, 71 S.Ct. 692, 696, 95 L.Ed. 912. There the learned justice, speaking for the majority, said: 'If the court is presented with a case it can decide but some issue is within the competence of an administrative body, in an independent proceeding, to decide, comity and avoidance of conflict as well as other considerations make it proper to refer that issue. But we know of no case where the court has ordered reference of an issue which the administrative body would not itself have jurisdiction to determine in a proceeding for that purpose.'
 It is admitted that the Commission does not have original jurisdiction to grant the particular things asked for by the plaintiff in this suit. That body may, when called upon to do so, determine the portions railroads should receive in the future for all joint rates and require an adjustment of past divisions of joint rates established by administrative action. 49 U.S.C.A. 15(6). But it has no authority to make reparations for past divisions of those retes which the parties themselves have agreed on. See Brimstone R. & Canal Co. v. United States, 1928, 276 U.S. 104, 121-122, 48 S.Ct. 282, 72 L.Ed. 487. Nothing in this litigation concerns determination of matters in the future. What Susquehanna wants is a declaration of its rights under the contract in the past. Therefore, petitioner contends, no matter what the character of the issues involved, the court had no power to make this reference.
 We do not think the question is that easy. The passage quoted is merely dicta and has been severely criticized. See Jaffe, Primary Jurisdiction Reconsidered: The Anti-Trust Laws, 104 U.Pa.L.Rev. 577, 588-89 (1954). See also United States v. T.I.M.E., Inc., 5 Cir., 1958, 252 F.2d 178. Further, Reading has come up with some ingenious arguments in support of a view that the Commission does have original jurisdiction in these matters. We prefer not to rest our decision upon this ground.
 
 
 [2]
 It is to be noted also that this case does not involve the question of the proper rates to be charged by a carrier in its tariffs as it serves the public. The litigation, at this stage at any rate, is simply for a division of through rate agreed upon by the parties, or alleged to have been agreed upon by them, and there is no complaint that so far as the public is concerned they are either being given or charged too much