UNITED STATES of America, Plaintiff,

v.

SUMTER COUNTY SCHOOL DISTRICT NO. 2, Dan L. Reynolds, Chairman, and H. Curtis Edens, Jr., Clarence B. Phillips, Jr., W. Hazel McCoy, and Russell F. Jones, Members of the Board of Trustees of Sumter County School District No. 2, and Hugh T. Stoddard, District Superintendent of Education of Sumter County School District No. 2, Defendants.

Civ. A. No. AC–1469.

United States District Court E. D. South Carolina.

Heard July 14, 1964.

Decided July 29, 1964.

Terrell L. Glenn, U. S. Atty. for Eastern Dist. of South Carolina, and George E. Lewis, Asst. U. S. Atty., for Eastern Dist. of South Carolina, for plaintiff.

Shepard K. Nash and John S. Wilson, Sumter, for defendants.

HEMPHILL, Chief Judge.

Shaw Air Force Base, a defense establishment located in Sumter County, South Carolina, has, as necessary to its operation and performance, military and civilian personnel, many of whom live on the Base, which is owned by the United States of America. At the present time, approximately 970 children, of elementary and high school age, live on the Base. Under the provisions of Chapter 19, Title 20, United States Code, the United States Commissioner of Education has approved, and plaintiff has paid, grants calculating an estimated Nine Hundred Ten Thousand Four Hundred Sixty Five and 33/100 ($910,465.33) Dollars between 1950 and today, for the construction and improvement of certain schools, recognized as being necessary and desirable for the instruction of the 970 children on Shaw Air Force Base and other children living off the Base. In the past, the three schools involved in this action, all owned and operated by Sumter County, have been available to children living on Shaw Air Force Base as well as others.

On May 11, 1964, Hugh T. Stoddard, District Superintendent of Education for School District No. 2 of Sumter County, in which he resides, directed a letter to the Commanding Officer of Shaw Air Force Base which read:

"By direction of the Board of Trustees of Sumter County School District Number Two you are herewith advised that said District does not feel that it can longer assume the responsibility for the education of the children living on Shaw Air Force Base, effective 1 July 1964.

"With concern for, and in the educational interest of said children, the Trustees are willing to negotiate a lease on a year by year basis, at a reasonable rent, for the school building adjacent to Shaw Air Force Base, known as Shaw Heights Elementary School, so that said children may be housed. The annual rental may be fixed by the Air Force.

"Further, should some of the children on the Base wish to attend the schools of this District, applications might be accepted and considered in the light of space available and/or other factors, and with the stipulation that, if accepted and upon payment of tuition, they would attend the school to which assigned by the Trustees."

While this letter did not so state, the schools which were affected were Shaw Heights Elementary School, for which the school district received a grant of Two Hundred Eighteen Thousand Nine Hundred Thirty Nine and 18/100 ($218,-939.18) Dollars, plus an additional Eighty-One Thousand Seven Hundred Sixty and 98/100 ($81,760.98) Dollars; Hillcrest Elementary High School located approximately five miles from the Base, for which various grants were received, and Shaw Junior High School located across from the Base for which defendants, or their predecessors had received various grants from the United States. The amount which the defendants or Sumter County contributed is disputed, but the amount, whatever it is, has no relevancy to the issue here.

On July 2, 1964, plaintiff instituted this action to enjoin defendants, their successors in office, and all persons in active concert or participation with them, from failing to make the schools of Sumter County, in School District No. 2, in particular the schools in question, available to the children on and off the Base and thus avoiding the responsibility of the education of said children, and asking for a rule to show cause why a preliminary injunction should not be issued pending a trial on the merits. Pursuant to the rule issued, on July 14, 1964, a hearing was had at Columbia, South Carolina, and the petition for prayer for preliminary injunction, at which hearing both parties were represented. At such hearing the record was completed and full arguments heard.

Counsel for defendants initially questioned the jurisdiction of the United States District Court to hear the cause,

948

arguing that plaintiff could not maintain the action under Title 28 U.S.C. § 1345, as the Court was limited to such authority as is stated in Title 20 § 641, U.S.C., as amended, and Title 20, § 241(a) (b). The Court finds this contention on the part of defendants untenable. It was admitted at the hearing that a contractual obligation existed by virtue of certain assurances admittedly given by defendants, or their predecessors in office, upon receipt of the grants, that the school facilities of said district "will be available to the children for whose education contributions are provided * * * on the said terms in accordance with the laws of the state in which applicant is situated, as they are available to other children in applicant's district". These assurances were given on the eight separate occasions the school district applied for and received financial aid from the United States for school construction and/or improvement.

Title 20 U.S.C. § 641 authorizes the Commissioner of Education of the United States to withhold payments of Federal funds under his jurisdiction, from a local educational agency failing to comply with statutes or regulations applicable, or which diverts or improperly uses the funds. A hearing is contemplated and provided for.

Subsection (b) of § 641 reads as follows:

"The final refusal of the Commissioner to approve part or all of any application under this chapter, and the Commissioner's final action under subsection (a) of this section, shall be subject to judicial review on the record, in the United States court of appeals for the circuit in which the local educational agency is located, in accordance with the provisions of the Administrative Procedure Act. Sept. 23, 1950, c. 995, § 11, as added Aug. 12, 1958, Pub.L. 85–620, Title I, § 101, 72 Stat. 554." Title 20 U.S.C. § 241 provides:

"(a) In the case of children who reside on Federal property—

"(1) if no tax revenues of the State or any political subdivision thereof may be expended for the free public education of such children; or

"(2) if it is the judgment of the Commissioner, after he has consulted with the appropriate State educational agency, that no local educational agency is able to provide suitable free public education for such children.

the Commissioner shall make such arrangements (other than arrangements with respect to the acquisition of land, the erection of facilities, interest, or debt service) as may be necessary to provide free public education for such children. Such arrangements to provide free public education may also be made for children of members of the Armed Forces on active duty, if the schools in which free public education is usually provided for such children are made unavailable to them as a result of official action by State or local governmental authority and it is the judgment of the Commissioner, after he has consulted with the appropriate State educational agency, that no local educational agency is able to provide suitable free public education for such children. To the maximum extent practicable, the local educational agency, or the head of the Federal department or agency, with which any arrangement is made under this section, shall take such action as may be necessary to ensure that the education provided pursuant to such arrangement is comparable to free public education provided for children in comparable communities in the State, or, in the case of education provided under this section outside the continental United States, Alaska, and Hawaii, comparable to free public education provided for children in the District of Columbia. For the purpose of providing such comparable education,

personnel may be employed without regard to the civil-service or classification laws. In any case where education was being provided on January 1, 1955, or thereafter under an arrangement made under this subsection for children residing on an Army, Navy (including the Marine Corps), or Air Force installation, it shall be presumed, for the purposes of this subsection, that no local educational agency is able to provide suitable free public education for the children residing on such installation, until the Commissioner and the Secretary of the military department concerned jointly determine, after consultation with the appropriate State educational agency, that a local educational agency is able to do so.

"Education of children in adjacent areas

"(b) In any case in which the Commissioner makes such arrangements for the provision of free public education in facilities situated on Federal property, he may also make arrangements for providing free public education in such facilities for children residing in any area adjacent to such property with a parent who, during some portion of the fiscal year in which such education is provided, was employed on such property, but only if the Commissioner determines after consultation with the appropriate State educational agency (1) that the provision of such education is appropriate to carry out the purposes of this chapter, (2) that no local educational agency is able to provide suitable free public education for such children, and (3) in any case where in the judgment of the Commissioner the need for the provision of such education will not be temporary in duration, that the local educational agency of the school district in which such children reside, or the State educational agency, or both, will make reasonable tuition payments to the Commissioner for the education of such children. Such payments may be made either directly or through deductions from amounts to which the local educational agency is entitled under this chapter, or both, as may be agreed upon between such agency and the Commissioner. Any amounts paid to the Commissioner by a State or local educational agency pursuant to this section shall be covered into the Treasury as miscellaneous receipts."

\* \* \* \* \* \*

Defendants contend that since these sections do not authorize the instant action that no authorization exists. These sections neither give permission for, nor place limitation on, the case before this Court. The instant case is not one involving diversion or withholding of funds, as such.

Title 28 U.S.C. § 1345 gives this Court original jurisdiction in this case.[1] This is an action to enforce the obligations of a contract.[2] Surely Congress did not intend to allow the United

1. "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress. June 25, 1948, c. 646, 62 Stat. 933.

2. Called "assurances" in this action. In each instance of grant School District 2A made application (as exhibited before the Court) on which it represented as follows:

12. c. How will the proposed facilities be utilized to educate Federally connected children? "Virtually all Federally connected and living on base"

and

ASSURANCES 4: "The Applicant's school facilities will be available to the children for whose education contributions are provided in Title II of Public Law 815 on the same terms, in accordance with the laws of the state in which Applicant is situated, as they are available to other children in Applicant's school district".

States, through the Commissioner of Education, on the one hand, and/or Sumter School District 2A on the other, to enter a contract which was unenforceable. Rex Trailer Co. v. United States [3] is authority for the holding that: "The Government has the right to make contracts and hold and dispose of property, and, for the protection of its property rights, it may resort to the same remedies as a private person."[4]

██ If the Commissioner of Education had approved an application of the School District and failed to complete payment, and the District had acted in reliance thereon the Federal Courts would be a proper forum for the School District to resort to for relief. This is not a case involving the issue of segregation so is not governed by United States v. Madison County Board of Education.[5] Federal grants authorized by Congress create binding contracts.[6] The Prince George County case [7] states: "The Court further concludes that the United States has standing to sue and enforce the contract made by the School Board and the United States."

It is obvious from the application records in evidence before the Court that the money was obtained for the specific purpose of providing the school housing, the brick and mortar, as it were, for Shaw Air Force Base children.[8]

██ The Commissioner made the grants, the money was paid, in good faith, on the "assurances". The plaintiff now asks good faith compliance of those who realized the benefits. No one would deny that the children are entitled to education. Sumter County owes the integrity of its heritage, the performance of its solemn, binding, contractual obligations. If Sumter County will not perform as a matter of honor, the Court must enforce as a matter of right.

██ The applications for financial assistance by the School District and the approval of such applications, together with the commitment of Federal funds by the Commissioner, contain all the elements of a contract. Burke v. Southern Pac. Ry., 234 U.S. 669, 679, 34 S.Ct. 907, 58 L.Ed. 1527 (1914); United States v. Northern Pacific Ry., 256 U.S. 51, 63, 41 S.Ct. 439, 65 L.Ed. 825 (1921); United States v. Northern Pac. Ry., 311 U.S. 317, 61 S.Ct. 264, 85 L.Ed. 210 (1940); United States v. City and County of San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050 (1940); United States v. County School Board of Prince George County, Virginia, D.C., 221 F. Supp. 93. The United States, just as a private person, has standing to sue for breach of contract notwithstanding the absence of express statutory authority to do so. Dugan v. United States, 3 Wheat. 172, 16 U.S. 172, 181, 4 L.Ed. 362 (1818); Cotton v. United States, 11 How. 229, 52 U.S. 229, 231, 13 L.Ed. 675 (1850); Rex Trailer Co. v. United States, 350 U.S. 148, 151, 76 S.Ct. 219, 100 L.Ed. 149 (1956); United States v. County School Board of Prince George County, Virginia, supra; Jessup v. United States, 16 Otto 147, 106 U.S. 147, 152, 1 S.Ct. 74, 27 L.Ed. 85 (1882). The remedies available to the United States are the same as those available to a private party. Rex Trailer Co. v. United States, supra. One of such remedies is of course that of specific performance. Dugan v. United States, supra, 3 Wheat. 181, 16 U.S. 181; United States v. County School Board of Prince George County, Virginia, supra.

██ The remedy of specific performance, in this case, can only be pursued.

---

3. 350 U.S. 148, 149, 151, 76 S.Ct. 219, 221, 100 L.Ed. 149.

4. Citing Cotton v. United States, 11 How. 229, 13 L.Ed. 675.

5. 326 F.2d 237 (5th Cir. 1964).

6. United States v. County School Board, Prince George County, 221 F.Supp. 93 (D.C.Va.1963).

7. See footnote 6.

8. In Government's Exhibit 1, on one application SCHOOL LOCATION was described as "1. The school will be constructed just across road from Shaw Air Force Base and Wherry Housing Project within reasonable walking distance."

and realized by injunction or mandamus The relief sought is injunction. Injunction is proper; if there is failure to perform as a result, mandamus will lie.

■ The defendants rely upon the decision of the Court of Appeals for the Fifth Circuit in United States v. Madison County Board of Education, 326 F.2d 237 (C.A.5, 1964), where the Court reached a different result than was reached in the Prince George County case. The decision in the Madison County case, however, was placed on very narrow grounds. The Court there said nothing inconsistent with the conclusions here reached that the school board's promise to educate the Federal children is a legally binding contract obligation and that the contract is breached by refusing to educate the children living on Federal property. The Fifth Circuit denied the Government specific enforcement of the contract upon the narrow ground that the doctrine of "primary jurisdiction" [9] required that the Commissioner of Education use the remedies available to him before the Courts could grant the equitable remedy of specific enforcement. Whatever impelled the Fifth Circuit to reach that conclusion in the Madison County case it cannot apply here. All of the funds applied for by Sumter County School District No. 2, totaling almost $1,000,000, have already been paid by the United States and the construction projects have been completed. The cutting off of further funds under 20 U.S.C. § 641, while it may provide a significant remedy if a project is still in progress, provides no remedy at all in the circumstances of this case. Similarly, the construction and operation of school facilities on the Base to educate the on-Base children would simply deprive the United States of the benefits of its contract. It is not for this Court to pass upon the wisdom of the decision of the Congress in providing for the education of the dependents of Federal personnel in the manner that it has done in Chapter 19 of Title 20. Congress could have provided for on-Base education. It decided not to, except under the most extreme circumstances as when local authorities are "not able" to provide a suitable education. What Congress did do was to make funds available to the local authorities to educate the children, exacting in exchange for the Federal funds the simple promise that the local school authorities would make the facilities available to the children on whose behalf the payments were made. If this promise is not specifically enforceable then the entire Federal purpose in expending millions of dollars could be defeated by the mere whim of a school board. This result could hardly have been intended by the Congress. This Court sees nothing in the doctrine of "primary jurisdiction" that requires it to reach such an anomalous result in this case.

Sumter County School District No. 2: Dan L. Reynolds, Chairman, and H. Curtis Edens, Jr., Clarence E. Phillips, Jr., W. Hazel McCoy, and Russell F. Jones Members of the Board of Trustees of Sumter County School District No. 2; and Hugh T. Stoddard, District Superintendent of Education of Sumter County School District No. 2, all are hereby enjoined pending the trial and final judgment in this case, from:

1. Excluding or refusing to enroll children in the public schools of Sumter County School District No. 2 upon the ground that such children reside on prop-

9. It is doubtful that the doctrine of "primary jurisdiction" applies at all where the United States is the plaintiff. C. A. B. v. Modern Air Transport, 179 F.2d 622 (C.A.2, 1950). Moreover, the "primary jurisdiction" doctrine is inapplicable where questions of contract interpretation and issues of law are involved, rather than matters of specialized administrative knowledge. Great Northern Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943 (1922), reaffirmed in United States v. Western Pacific Ry. Co., 352 U.S. 59, 64–65, 69, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); Accord: New York, S. & W. R. Co. v. Follmer, 254 F.2d 510, 513 (C.A.3, 1958).

erty under the jurisdiction of the United States:

2. Failing to make all necessary plans and preparation for the enrollment in the public schools under the jurisdiction of the defendants for the 1964–65 school year of children living on Shaw Air Force Base and other Federal properties, upon the same basis as other children residing within Sumter County School District No. 2; and

3. Otherwise failing or refusing to carry out the terms of the written assurances given the Commissioner of Education to the effect that school facilities of Sumter County School District No. 2 will be available to the children for whose education contributions are provided in Chapter 19 of Title 20, United States Code, on the same terms in accordance with the laws of the State of South Carolina as they are avilable to other children in Sumter County School District No. 2.

Costs shall be taxed against defendants.

And it is so ordered.