UNITED STATES of America, Plaintiff,

v.

BOARD OF EDUCATION OF the GARFIELD HEIGHTS CITY SCHOOL DISTRICT et al., Defendants.

Civ. A. No. C75–689.

United States District Court, N. D. Ohio, E. D.

Oct. 4, 1976.

Amendment. Defendants, the Board of Education of Garfield Heights and James A. Harper, Superintendent of Schools, have jointly filed a motion for judgment on the pleadings and/or for summary judgment. Defendants argue that this court lacks jurisdiction of the United States' claims and that the United States lacks standing to bring the claims under either Title VII or the Fourteenth Amendment. Defendants also say that they are entitled to summary judgment on the undisputed facts of record.

The Attorney General in his complaint claims jurisdiction in this court over this action and in his brief asserts authority to sue. As seen, defendants challenge both this court's jurisdiction to hear the Attorney General's suit and his standing to bring the action. It is concluded that the question raised by the defendants' motion for judgment on the pleadings is essentially one of the Attorney General's standing to bring this action and it will thus be so treated. This question will now be considered.

Frederick M. Coleman, U.S. Atty., Cleveland, Ohio, Alexander C. Ross, Gerald F. Kaminski, Kaydell O. Wright, Department of Justice, Washington, D.C., for plaintiff.

John F. Lewis, John T. Meredith, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

The Attorney General of the United States filed this lawsuit on August 5, 1975, alleging that the faculty and staff hiring and recruitment practices of the Garfield Heights City School District are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Fourteenth Amendment. The Attorney General bases his claim for jurisdiction in this court upon 28 U.S.C. § 1345 (giving district courts original jurisdiction in suits brought by the United States), and 42 U.S.C. § 2000e–6(b), and presumably also upon the Fourteenth

I.

A.

Section 707 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–6, the "pattern or practice" section of Title VII, from its inception has provided in subsection (a), that

(a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter . . . the Attorney General may bring a civil action in the appropriate district court of the United States . . . .

Defendants' motion is based in part upon the amendments to Title VII of the 1964 Civil Rights Act contained in the Equal Employment Opportunity Act of 1972, 86 Stat. 107. Defendants more specifically rely on 42 U.S.C. § 2000e–6(c), which was added to section 707 of Title VII, 42 U.S.C.

§ 2000e–6, by the 1972 legislation and provides:

> (c) Effective two years after March 24, 1972, the functions of the Attorney General under this section shall be transferred to the Commission, together with such personnel, property, records, and unexpended balances of appropriations, allocations, and other funds employed, used, held, available, or to be made available in connection with such functions unless the President submits, and neither House of Congress vetoes, a reorganization plan pursuant to chapter 9 of Title 5, inconsistent with the provisions of this subsection. [None has been submitted.] The Commission shall carry out such functions in accordance with subsections (d) and (e) of this section.

Defendants argue that the foregoing language of subsection (c) of section 707

> . . . withdrew the Attorney General's right to initiate pattern or practice litigation pursuant to Section 707 on March 24, 1974, seventeen months before this action was filed. [See 42 U.S.C. § 2000e–6(c).]

Taking the language at its face value, indeed this appears to be the plain meaning of subsection (c). Nevertheless, the Attorney General argues:

> The whole of Title VII and its legislative history demonstrate convincingly that the Attorney General retains the authority to file "pattern or practice" suits such as this one against public employers.

Before considering whether it is appropriate or necessary to examine the legislative history of subsection (c), it is helpful to test its apparent plain meaning by looking at related amendments to Title VII, also added by the Equal Employment Opportunity Act of 1972. Subsection (e) added to section 707 authorizes the Commission to investigate and act on charges of pattern or practice discrimination. However, "All such actions shall be conducted in accordance with the procedures set forth in section 2000e–5 of this title." *In pari materia*

is the amendment to section 2000e–5, section 706(f)(1) of Title VII, that provides that upon the failure of EEOC's conciliation efforts

> . . . the Commission may bring a civil action against any respondent *not* a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. . . . [Emphasis added.]

■ These related 1972 amendments to the Act reveal that while only the Attorney General can bring Title VII civil actions against governmental bodies, no such action—under either section 706 or section 707 of Title VII—can be commenced prior to the filing of charges with the EEOC and the failure of Commission conciliation efforts. Section 707(c), both when read separately and when construed together with related sections 707(e) and 706(f)(1), all adopted as amendments to the Equal Employment Opportunity Act, unambiguously shows that as of March 24, 1974, the Attorney General no longer had standing to bring an original action (*i. e.*, without certification to him by the EEOC and before it completes attempts at conciliation) against state or municipal governmental agencies or political subdivisions.

### B.

Since the relevant statutory language has a single and unambiguous meaning, there is no need to consider the legislative history which the Attorney General cites in his brief. As the Sixth Circuit Court of Appeals recently stated in *H. Wetter Mfg. Co.*

*v. United States*, 458 F.2d 1033, 1035 (6 Cir. 1972):

> We may not, under the guise of construction, find a Congressional intent that is contrary to the clear language employed by it. Where a statute is unambiguous, it should be given effect according to its literal language. . . . Nor should we ". . . depart from the plain meaning of the section to bring about a uniformity which it is claimed Congress intended but failed to express."

*See also United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); *United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 83–84, 53 S.Ct. 42, 77 L.Ed. 175 (1932).

Relying on *United States v. Public Utilities Comm'n*, 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020 (1952) and *United States v. American Trucking Ass'n*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1939) (similarly see *Train v. Colorado Public Interest Research Group*, 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976)), the Attorney General argues:

> If an internal inconsistency exists within a statutory scheme or if a literal construction of words appear to conflict with the statutory purpose, reference to the legislative history is appropriate.

*United States v. American Trucking Ass'n*, quoted with approval in *Train, supra*, permits reference to legislative history to discern legislative intent "however clear the words may appear on 'superficial examination.'" 426 U.S. at 10, 96 S.Ct. at 1942. Our previous analysis of the statutory scheme shows that the legislative meaning reflected therein is pervasive, not superficial. Nonetheless, we turn to the legislative history in search of the statutory purpose to see if it conflicts with the legislative intent reflected in the plain and unambiguous meaning of subsection (c) of section 707.

■ Committee reports are more authoritative sources of legislative history than floor debates. *United States v. Int'l Union UAW*, 352 U.S. 567, 585, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957). The court must place primary reliance on the conference committee report on the 1972 legislation to ascertain if nonstatutorily expressed legislative intent conflicts with the legislative intent expressed in the statutory amendments themselves. Once again, however, the legislative intent is clear and unambiguous:

> The Senate amendment provided for a transfer of the Attorney General's "pattern or practice" jurisdiction to the Commission two years after enactment. In the interim period there would be concurrent jurisdiction. The transfer would be subject to change in accordance with a presidential reorganization plan if not vetoed by Congress. The House bill left pattern or practice jurisdiction with the Attorney General. The House receded.

Joint Explanatory Statement of Managers at the Conference on H.R. 1746, U.S.Code Cong. & Admin.News pp. 2179, 2183–84 (1972). *See also* House Report No. 92–238, U.S.Code Cong. & Admin.News p. 2137 (1972) at pp. 2145–2149, ("Section 707 of the act has been amended by transferring the 'pattern or practice' suit authority from the Department of Justice to the Commission.") and p. 2174. The congressional intent unambiguously evident in both the statutory language itself and the committee reports is in no way contradicted by the selected excerpts of floor debates cited by the Attorney General.[1]

---

1. In reaching this conclusion the court need not disagree with the Attorney General's statement in his brief that "The debates cited . . . amply establish the intent of Congress that the only federal authority to seek judicial enforcement of Title VII against public employers would be that exercised by the Attorney General." Granting that the remarks of the individual Congressmen cited by the Attorney General do establish this intent, none of the cited debates reach the issue in this lawsuit, which is not whether the Attorney General has the statutory authority to sue public employers for Title VII violations, but rather whether or not that authority can be exercised by the Attorney General without a prior filing with, and attempt at conciliation by, the EEOC. On this critical point the debates cited by the Attorney General do not establish his position.

## C.

There is apparently only one reported case which has directly dealt with the statutory authority of the Attorney General to bring a direct "pattern or practice" suit under 42 U.S.C. § 2000e–6(c) after March 24, 1974. In that case, *United States v. Pima Community College*, 409 F.Supp. 1061 (D.C.Ariz.1976), the Attorney General made the same statutory arguments that he makes in this case, all of which were rejected by the district court. That court stated,

The statute is unequivocal. Since March 24, 1974, the sole federal agency authorized to bring a pattern and practice suit against an employer, either private or public, is the Equal Employment Opportunity Commission.

The court concluded,

. . . when a *pattern or practice* of employment discrimination is alleged, then Congress has clearly expressed its direction that only one agency, the Commission, bring such an action either in the private sector or the public sector. The reason appears clear from a reading of the amendment and its history that it was designed to eliminate duplication of effort, the over-lapping of authority and to standardize procedures. A common sense reading and application of the various sections of the Act as it now stands, indicates effectiveness of such design. The Attorney General is not authorized to bring a pattern or practice suit as was done in this case, authority to do so was

revoked by the passage of the 1972 amendment.

409 F.Supp. at 1063.

Although this court must reject any suggestion from the *Pima Community College* opinion that the EEOC can itself bring lawsuits in the federal courts against governmental bodies (such a possibility being explicitly foreclosed by 42 U.S.C. § 2000e–5(f)(1)), in denying standing to the Attorney General under Title VII the Arizona district court reached the same end result as does this court in the instant case.

In addition to this one case in which the issue was presented directly, several courts in dicta have also expressed the belief that the Attorney General no longer has any original authority to institute "pattern or practice" lawsuits.[2] There can thus be no question that the Attorney General is without statutory authority under Title VII to bring the present lawsuit, and this court accordingly so finds.

## II.

The Attorney General also apparently attempts to establish his authority to bring this lawsuit on the theory of a nonstatutory executive right to sue directly on the Fourteenth Amendment. The Attorney General cites several cases in which courts have upheld nonstatutory standing for the United States to vindicate the civil rights of private parties.[3] Defendants, on the other hand, cite several cases in which federal courts have rejected the argument of any

---

**2.** These cases include the following: *United States v. City of Jackson, Mississippi*, 519 F.2d 1147, 1151 n. 8 (5 Cir. 1975), ("The EEOC . . . since March, 1974, has had the § 707 powers exercised by the Justice Department . . ."); *United States v. Allegheny-Ludlum Ind., Inc.*, 517 F.2d 826, 843 n. 17 (5 Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976), ("As of March 24, 1974, the EEOC assumed the full range of 'pattern or practice' functions which had belonged to the Justice Department since the effective date of Title VII, July 2, 1965."); *EEOC v. Int'l Longshoremen's Ass'n*, 511 F.2d 273, 274 n. 3 (5 Cir.), *cert. denied*, 423 U.S. 994, 96 S.Ct. 421, 46 L.Ed.2d 368 (1975).

**3.** The Attorney General cites *United States v. City of Jackson, Miss.*, 318 F.2d 1, *rehearing*

denied 320 F.2d 870 (5 Cir. 1963); *United States v. Brittain*, 319 F.Supp. 1058 (N.D.Ala. 1970); *United States v. Brand Jewelers*, 318 F.Supp. 1293 (S.D.N.Y.1976); *United States v. Original Knights of the Ku Klux Klan*, 250 F.Supp. 330 (E.D.La.1965); *United States v. United States Klans*, 194 F.Supp. 897 (M.D.Ala. 1961). Of these cases only *Brand Jewelers* listed the Fourteenth Amendment as a direct basis for the standing of the United States, and even in *Brand Jewelers* the alternative and more fully discussed basis of standing was the protection of governmental interests under the Commerce Clause of the Constitution. *Compare* these cases with those cited in n. 4, *infra*, in which courts have rejected nonstatutory governmental standing based upon the Fourteenth Amendment.

nonstatutory executive standing.[4] After considering these conflicting cases, and, more importantly, the elaborate congressional coverage of employer discrimination as expressed in Title VII of the 1964 Civil Rights Act, this court concludes that the Attorney General has no nonstatutory standing to bring this lawsuit. Although there certainly may be instances in which the United States may have nonstatutory standing to bring lawsuits,[5] and there may even be occasions on which the United States may vindicate the civil rights of individuals while simultaneously vindicating a national interest under constitutional provisions such as the Commerce Clause,[6] the present case is not such a lawsuit.

The most important aspect of this case which requires rejection of any nonstatutory standing is the comprehensiveness of Title VII's statutory scheme to redress the alleged violations of which the United States complains. As the Supreme Court stated last term in construing section 717 of Title VII of the 1964 Civil Rights Act, such a "precisely drawn, detailed statute preempts more general remedies." *Brown v. General Services Administration*, 425 U.S. 820, 821, 96 S.Ct. 1961, 1962, 48 L.Ed.2d 402 (1976). The Court's holding in *Brown*, that section 717 of Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment, was supported by reasoning which is as applicable to the sections of Title VII at issue in this case as to section 717 of Title VII:

> The balance, completeness, and structural integrity of § 717 are inconsistent with the petitioner's contention that the judicial remedy afforded by § 717(c) was designed merely to supplement other putative judicial relief. His view fails, in our estimation, to accord due weight to the fact that unlike these other supposed remedies, § 717 does not contemplate merely judicial relief. Rather, it provides for a careful blend of administrative and judicial enforcement powers. . . .

425 U.S. at 832, 96 S.Ct. at 1968.

▆▆▆ Since it was clearly Congress' intent in Title VII to require all charges of "pattern or practice" discrimination to be initially investigated by the EEOC, and to require the EEOC to attempt a conciliation of such disputes before any resort to the courts, this court cannot find an implied nonstatutory executive right of action and thereby frustrate such a comprehensive and carefully detailed congressional plan for attacking the evils of employer discrimination.[7] The discrimination alleged in this

---

4. Defendants cite *United States v. School District of Ferndale, Mich.*, 400 F.Supp. 1122 (E.D. Mich.1975); *United States v. Biloxi Municipal School District*, 219 F.Supp. 691 (S.D.Miss. 1963), *aff'd on other grounds* 326 F.2d 237 (5 Cir. 1976), *cert. denied* 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964); *United States v. Madison County Bd. of Education*, 219 F.Supp. 60 (N.D.Ala.1963), *aff'd on other* grounds 326 F.2d 237 (5 Cir.), *cert. denied* 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964). The bases of these courts' holdings include findings that the Fourteenth Amendment's guarantees are of individual rights to be individually vindicated, governmental enforcement of the amendment to come through legislation enacted pursuant to § 5 of the Fourteenth Amendment.

5. *See, e. g., New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *In re Debs*, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895); *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747 (1888).

6. See the cases cited in n. 3, *supra*.

7. If the Attorney General's position in this case were upheld, simultaneous and independent investigations of public employers by the Attorney General (under § 707) and the EEOC (under § 706) would be possible. Such overlapping jurisdiction could also result in conciliation attempts of the EEOC under § 706 being undermined by the institution of § 707 lawsuits by the Attorney General against the same public employers. These were the exact problems, in fact, which Congress meant to eliminate, rather than create, by passing the 1972 amendments. *See* House Report No. 92–238, U.S. Code Cong. & Admin.News pp. 2137, 2149–50 (1972):

> The Committee feels that the transfer of the "pattern or practice" jurisdiction to the Equal Employment Opportunity Commission would eliminate overlapping jurisdictions and unnecessary duplication of functions. It would promote uniformity in the development of law, goals, policies, and procedures and promote economic use of governmental resources.

case is of precisely the type anticipated and meant to be covered by Title VII. The Attorney General's role in the bringing of employer discrimination suits under the Civil Rights Act is so fully detailed that Congress could not have intended the Attorney General to initiate lawsuits outside of such procedures.

A recent federal district court case posed a somewhat similar problem as that now before this court, but in the context of school desegregation litigation brought by the Attorney General on behalf of the United States. Judge Kennedy in *United States v. School District of Ferndale, Michigan*, 400 F.Supp. 1122 (E.D.Mich.1975), held that a desegregation suit brought by the Attorney General must be dismissed because the statutory requirements of the Equal Educational Opportunity Act had not been complied with and nonstatutory executive standing to sue based on the Fourteenth Amendment did not exist for the suit.[8]

This court holds that the Attorney General has no nonstatutory right to bring this lawsuit. For the foregoing reasons, there being neither statutory nor nonstatutory authority for the Attorney General to bring this action, defendants' motion for judgment on the pleadings pursuant to Rule 12(c), Federal Rules of Civil Procedure, is granted. Thus it is unnecessary to reach the defendants' motion for summary judgment.

IT IS SO ORDERED.

---

**8.** On this later point of Fourteenth Amendment standing, Judge Kennedy concluded:

In this case there is no statutory expression of a national interest of the United States in the subject matter of this case, other than the Civil Rights Act of 1964, and the Equal Educational Opportunity Act of 1974, both of which contain specific authorization for suits by the Attorney General. The Court believes that this brings the case within the principle adopted in *Madison County* [*United States v. Madison County Board of Education*, 326 F.2d 237 (5 Cir.), *cert. denied*, 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964)]:

"A general liability created by statute without a remedy may be enforced by an appropriate common-law action. But where the provision for the liability is coupled with a provision for a special remedy, that remedy, and that alone, must be employed."
326 F.2d at 242, quoting *Pollard v. Bailey*, 87 U.S. 520, 527, 22 L.Ed. 376 (1874).
If the construction urged by the United States is correct, the provision of several civil rights acts authorizing actions by the Attorney General, frequently under limited circumstances, would be superfluous.
400 F.Supp. at 1130.